PEET v. DAKOTA FIRE & MARINE INS. CO.

1. A policy of insurance containing the condition, "This policy shall be void
   and of no effect, unless consent in writing is endorsed by the company
   hereon, in each of the following cases, viz.: (1) If the assured is not the
   sole and unconditional owner of the property, or if the property, or any
   part thereof, be or become mortgaged, or otherwise incumbered."—is

rendered void, if the property insured is incumbered, of which the insurer has no knowledge, and to which it has not assented, at the time the policy is issued.

2. An agreement in a lease of real property that on failure to pay the quarterly rent covenanted to be paid by the lessee, the buildings, improvements, and other property placed upon said real property by the lessee "are subject and held liable to restraint and sale under warrant, in like manner as personal property for said rent," etc.; and that said building, improvements, and other property may be followed and restrained, or the material thereof,—constitutes an incumbrance in the nature of a mortgage upon such buildings and improvements.

3. The fact that no rent was due and upaid at the time the policy was issued is not material, as such an agreement covers all rent that might become due during the continuance of the lease,—the last installment, as well as the first,—and the incumbrance upon the property continues until the termination of the lease.

4. Under the chattel mortgage law of this state, no particular form of words is necessary to constitute a chattel mortgage. It is sufficient that personal property is hypothecated for the performance of an act or to secure the payment of money, whether rent or otherwise.

5. The term "buildings, improvements, and other property" is broad enough to include "machinery, shafting, belting, pulleys, elevator, and fixtures" if used or contained in buildings or improvements upon the leased premises.

(Syllabus by the Court.   Opinion filed Aug. 31, 1895.)

Appeal from circuit court, Davison county. Hon. D. Haney, Judge.

Action on fire insurance policy. Judgment for plaintiff, and defendant appeals. Reversed.

The facts are stated in the opinion.

*Preston & Hannett,* for appellant.

A provision of a lease for a lien for rent is in effect a chattel mortgage. Greeley v. Winsor, 1 S. D. 117, 45 N. W. 325, 1 S. D. 619; 1 Cobbey, Chat. Mtges., Sec. 6. A writing in the nature of a lease may be a chattel mortgage even if the words sell, transfer or assign is not found therein. Ellington v. Charleston, 51 Ala. 166; Bryan v. Bryan, 35 Ala. 315; Strong v. Gregory, 19 Ala. 147; Reynolds v. Ellis, 103 N. Y. 116; Merril v. Rissler, 33 N. Y. 117. The execution of, or the presence of a mortgage upon insured property

is of itself an increase of the risk and a decrease of the security of the insurer and voids the policy. Lee v. Agricultural, 44 N. W. 683; Continental v. Van Lue, 126 Ind. 410; Ellis v. Ins. Co., 51 Ia. 577; Wensel v. Ins. Co. 7 Pac. 817; Mallory v. Ins. Co., 21 N. W. 772.

*A. E. Hitchcock,* for respondent.

Courts will construe a contract of insurance liberally so as to give it effect rather than to make it void. McNamara v. Ins. Co., 1 S. D. 346; Russell v. Ins. Co., 32 N. W. 96. A failure on the part of the insured to disclose all the facts about the property, will not, in the absence of fraud void the policy. Washington v. Weymouth, 135 Mass. 505; Commissioners v. Ins. Co., 112 Mass. 136; Fowle v. Ins. Co., 122 Id. 191; Walsh v. Association, 127 Id. 383.

CORSON, P. J. This is an action upon a fire insurance policy bearing date October 13, 1887. Judgment for plaintiff, and defendant appeals.

The policy was issued for "$1,500, on machinery, shafting, belting, pulleys, elevator, and fixtures, while contained in a three-story, iron clad building situated in Grand street, near Seventh street, Pittsburgh, Pa." The policy contained the following clause: "This policy shall be void and of no effect, unless consent in writing is indorsed by the company hereon, in each of the following cases, viz.: (1) If the assured is not the sole and unconditional owner of the property, or if the property or any part thereof, be or become mortgaged, or otherwise incumbered." The defendant, in its answer, set out the breach of said policy as follows: Defendant further avers that at the time said policy was issued, and up to and including the date of the fire alleged in plaintiff's complaint, the property insured and described in said policy was mortgaged and incumbered by an instrument in writing given by the insured, James M. Peet to one Mary E. Schenley, bearing date of the 21st of December, A. D. 1886, whereby he, the said insured, mortgaged and incumbered the improvements and other

personal property on said premises to the said Mary E. Schenley, and the personal property so mortgaged and incumbered was the identical property described in said policy of insurance, and insured thereby;   *   *   *   that the said mortgage or incumbrance was in full force and effect at the time of the issuing of said policy, up to and including the date of the destruction of the property by fire; that the same was during all of said period a valid and subsisting lien and incumbrance upon said property insured and destroyed by fire as alleged in plaintiff's complaint." On the trial the defendant introduced in evidence, without objection, the lease referred to in the answer, bearing date September 21, 1886, which contains the following clauses: "For and during the term of three years and nine months, for the annual rent of eight hundred dollars, lawful money of the United States (also, all taxes and assessments on the premises as they may become due), payable quarterly at the office of lessor; that is to say, the sum of two hundred dollars, lawful money aforesaid, on the 1st day of July, October, January and April following the day and date last aforesaid. And the party of the second part covenents and agrees to pay the rent, etc., aforesaid, on the days and times hereinbefore limited and appointed for the payment thereof;   *   *   *   and in case of violating these covenants, or any of them, said lessee and his assigns shall forfeit said lease and improvements, and lessors, without notice, may, either with or without any writ or legal process, at their option, re-enter and hold said premises, and the improvements, buildings, etc., from which time all claims by lessee shall fully cease. Improvements by the lessee erected may be removed from said premises at the termination of this lease, provided said covenants have been kept, and all arrearages, taxes, assessments, etc, for full term of lease as aforesaid, have been fully paid. But it is herein expressly understood and agreed that said buildings, improvements and other property on said premises are subject and held liable to distraint and sale under warrant, in like manner as personal property, for said rent, taxes, assessments, and charges, and at any time, in case of failure to pay the same, said

rent, taxes, assessments, etc., aforesaid, and at such time due, may be included in, as a part of, and do really make, the amount of rent due, and may, at the option of the lessors, be included in, and be distrained for on, the premises, or in case of removal (whether clandestinely or openly) of said buildings, improvements, or other property, without first satisfying all and every of arrearages as aforesaid (including such charges, taxes. and assessments as by the lessors may have been paid). said buildings and improvements, or the material thereof, may be followed and distrained as if still on the premises.    *    *    *    Now, in consideration of the premises, and of the said parties of the first part waiving such security for rents, taxes, etc., as said party of the second part was otherwise to furnish, the lessee agrees that if he should fail to pay the aforesaid rent, taxes, etc:, at the dates and times hereinbefore stipulated and appointed for the payment thereof, or any of said charges as aforesaid, that then and in that case the said parties of the first part may enter, levy, and distrain for the rent, taxes, charges, etc., so in arrears, or, if so removed. distrain them wherever found.    *    *    *    And the said tenant hereby, in consideration of the foregoing premises and conditions, waives the privileges of claim to all exemptions, stay of executions, and distraint of all and every of the rights, privileges, benefits, and claims there introduced, intended by the said or any other future act of assembly relative thereto."

It was admitted that the lease was a valid and subsisting lease between Mary F. Schenley and the said plaintiff, for the property described, at the date of said fire, and that plaintiff held under said lease. And it may be added that the undisputed evidence shows that the plaintiff was holding under this lease at the time the policy was issued. Upon the defendant's counsel offering to read the lease in evidence, the counsel for plaintiff interposed the following objection: "Plaintiff's counsel thereupon objects to reading said exhibit, as the same is incompetent and immaterial. It shows upon its face as not being an incumbrance or mortgage. There is no evidence whatever of any indebtedness existing be-

tween these parties. Therefore it is incompetent and immaterial to the issues in the case. (Objection sustained. Defendant excepts.)" The learned circuit court, after evidence on the part of the defendant that the company had no knowledge of this lease prior to issuing the policy and the loss of the property, directed a verdict for the plaintiff, to which defendant duly entered an exception.

It will thus be seen that only two questions are presented for our decision: (1) Does the lease in question, by its terms, create a lien or incumbrance upon the buildings and improvements placed upon the land by the lessee? (2) If the lease in question does, by its terms, create an incumbrance upon the buildings and improvements placed upon the land by the lessee, is the policy of insurance upon which this action is based forfeited by reason of said incumbrance?

This case was before this court at a former term, and the decision is reported in 1 S. D. 462, 47 N. W. 532. The learned counsel for respondent contends that that decision is *stare decisis* or the law of the case, upon the questions involved in this appeal. Undoubtedly, that decision is the law of this case, as to all questions properly raised and decided on that appeal, in all its subsequent stages. Bank v. Gilman, 3 S. D. 170, 52 N. W. 869. But the questions presented by this record were not involved or decided on the former appeal. The questions then presented are stated by Judge BENNETT, who wrote the opinion, as follows: "The questions presented by the record are: (1) Was the direction of the verdict for the plaintiff within the province of the court? (2) Were the notice and proofs of loss furnished by the plaintiff such as were required by the policy? (3) Did the fact that the building in which the property insured was situated stood upon leased ground make the policy void? (4) Was the ownership of the property changed after the policy was issued, and before the fire occasioning the loss? (5) Did the subleasing of the building in which the property insured was situated vitiate the terms of the policy?" It will thus be seen that the condition in the policy and

clauses in the lease now under consideration were not then before the court. It will be noticed that, by express stipulation in the policy, "the policy shall be void and of no effect * * * if the property, or any part thereof, be or become mortgaged or otherwise incumbered." This stipulation in the policy is authorized by section 4163, Comp. Laws, which reads as follows: "A policy may declare that a violation of specified provisions thereof shall avoid it; otherwise, the breach of an immaterial provision does not avoid the policy." As will be observed, this section provides that the policy shall be avoided by a violation of any specified provision thereof, whether material or not. The section above quoted creates no rule, but simply states in brief the general doctrine as held by the courts. Insurance Co. v. Vanlue 126 Ind. 410, 26 N. E. 119. It does not become necessary, therefore, to determine whether or not the provision in the policy we are now considering is material; but, were we required to pass upon this question, we should probably have no hesitancy in holding it material. Mortgages or incumbrances upon the property insured necessarily enhance the risk and decrease the security of the insurer. Lee v. Insurance Co., 79 Iowa, 379, 44 N. W. 683.

This brings us to the consideration of the stipulations in the lease, and the construction to be given them. The first and most important rule in construing a written instrument is to ascertain from the language used in the instrument the intention of the parties, if that intention can be ascertained from the language itself. The lease in this case provides for the payment by the lessee of the sum of $800 per annum rent, payable quarterly, for the period of three years and nine months from July 1, 1886, and also for the payment by the lessee of taxes, etc. The amount of rent to be paid is fixed and certain, and the lessee covenants to pay said rent on the days and times limited and appointed for the payment thereof. The lease also contains the other covenants usual in such leases. The lease then provides that: "And in case of violating these covenants, or any of them, said lessee and his assigns shall forfeit said lease and improvements, and lessors, without notice,

may, either with or without any writ or legal process, at their option, re-enter and hold said premises and improvements, buildings, &c., from which time all claim by the lessee shall fully cease." Improvements erected by the lessee may be removed at the termination of the lease, provided said covenants have been kept, and all rent, taxes, etc., have been paid.  It then provides that it is therein "expressly understood and agreed that buildings and improvements and other property on said premises are subject and held liable to distraint and sale under warrant, in like manner as personal property, for said rent, taxes, assessments, and charges."   And all such rent, taxes, assessments, and charges may be included in, and distrained for on, the premises.  It also provides that such buildings and improvements, or the material, may be followed and distrained as if still on the premises.  It finally stipulates that in consideration of the lessor's waiving such security for rents, taxes, etc., as said lessee was otherwise to furnish, the "lessee agrees that if he should fail to pay the aforesaid rents, taxes, &c.,   *   *   *   that then and in that case the said party of the first part may enter, levy, and distrain for the rent,   *   *   * or pursue said improvements and other goods, and distrain them wherever found."   The intention of the lessor to hold all buildings, improvements, and property that might be placed upon the property as security for the payment of the rent, etc., and of the lessee to hypothecate all of said buildings, improvements, and property on the premises, as security for the payment of the said rent, etc., seems too clear to admit of doubt.   The amount to be paid for rent was a fixed and definite sum, and the time for the payment was also fixed and definite.   And in case the lessee failed to pay the same the lessor was authorized to seize or distrain the building, improvements, and property on the premises, and sell the same to satisfy said rent, etc., and also to follow and seize and distrain said property if removed from the premises. Under the provisions of our statute relating to mortgages, no particular form of words is necessary to create a chattel mortgage lien.  A "mortgage" is defined therein as a "contract by which

specific property is hypothecated for the performance of an act, without the necessity of change of possession." Section 4346, Comp. Laws. As between the parties, such a mortgage is valid, though not witnessed or filed in the proper office. Machine Co. v. Lee, (S. D.) 57 N. W. 238. It may be embraced in, and constitute a part of a lease. Greely v. Winsor, 1 S. D. 117, 45 N. W. 325; Esshom v. Hotel Co. (S. D.) 63 N. W. 229. In the latter case the question of what will constitute a chattel mortgage lien was very fully discussed, and the views expressed by the supreme court of Iowa in Whiting v. Eichelberger, 16 Iowa, 422, were adopted, as stating the correct doctrine applicable to chattel mortgages under the statute of this state. In the important case (by reason of the amount involved) of Wright v. Bircher, 72 Mo. 179, the following clause was held to constitute a valid lien upon the property: "All furniture, fixtures, and other improvements to be bound for the rent, and for the performance of the other covenants and conditions of the lease." And the court in that case says: "In any view, however, that may be taken of the case, Bircher had a lien upon the property for the rent to become due by its terms." See Jones, Chat. Mortg. §§ 13, 15, and cases cited. If Mrs. Schenley had intended to rely upon the personal responsibility of the plaintiff, only, there would have been no necessity for several clauses in the lease. But it seems to us too clear for argument that she had no such intention, but, on the contrary, she intended to make herself amply secure by a lien upon all the buildings, improvements and property that the plaintiff might place on the lot leased. And this intention is manifest in every part of the lease. It may properly be called an "iron-clad" lease, so carefully is her lien upon the property of the respondent for the rent, taxes, etc., provided for, secured and guarded.

It is contended by the counsel for the respondent that the power to distrain for rent is not given by our statute, and hence these clauses in the lease providing for such distraint of the property cannot be given effect. But a power to distrain is a mere form of remedy. If, as we have said, the right to take and sell the

property is given, or, in other words, if the property is hypothe-
cated to secure the performance of the covenants of the lease,
equity, if not the law, will provide the remedy for enforcing the
lien. It is clear to our minds that when this policy was issued the
property described in the lease was mortgaged to Mrs. Schenley,
to secure the payment of her rents, taxes, etc.

The counsel for the respondent further contends that, as no
rent was shown to be due when the policy was issued, there was
no violation of the condition. But this position is not tenable. A
mortgage is not the less a mortgage or incumbrance upon the
property because the money which the mortgage was given to se-
cure is not due. The lien given by the stipulations in the lease
was for all rent that might accrue during the term of the lease,
which at the date of the policy had more than two years yet to
run. This point was made in Wright v. Bircher, supra, but the
supreme court of Missouri thus disposes of it: "The position that
the lien was only for rent that might at any time be in arrear, and,
there being none in arrear when the mortgages to Nannie M.
Wright were executed, there was no lien in favor of Bircher at
that time, cannot be maintained. By a fair construction of the
lease, the lien reserved was for the full amount of the rents which,
by its provisions, would accrue within the term for which the
house was let. It was not to secure the first installment of rent
which the lessee might fail to meet, only, as counsel contend, but
each installment, and it created a lien as well for the last as for
any preceding installment." A similar proposition was urged
upon the court in the case of Insurance Co. v. Vanlue, supra.
But the supreme court of Indiana, speaking through Mr. Justice
ELLIOTT, says: "It is true that when the assured received his
policy, and when the loss occured, he was not in default; but,
although not in default, his engagement continued, and the secur-
ity for its performance in the future remained unannulled. In
every instance where a valid mortgage is executed, it constitutes
an incumbrance, and remains an incumbrance until the engage-
ment for which it stands as a security is performed. It seems be-

yond controversy that a lien was charged upon the land in this instance, and that it continued in force during the life of William Vanlue, since no other construction can be given the instrument without totally disregarding the language concerning the lien and the right to a foreclosure. If there was a continuing charge upon the land, we can conceive no valid reason for holding that it did not constitute an incumbrance, within the meaning of the contract of insurance. It is none the less an incumbrance because the engagement it secures was performed as fully and promptly as it was possible for the appellee to perform it, up to the time the policy was issued to him, for the reason that the lien was a continuous one, requiring the yearly performance of an act, and terminating only upon the death of the lien holder. Reluctant as we are to deny a recovery, we can see no avenue which will lead us to a conclusion adverse to the appellant. We do not doubt that the appellee acted in good faith, believing that the mortgage to his father was not an incumbrance; but neither his belief, nor that of the company, can affect the question, for, if the mortgage did constitute an incumbrance, it must be so adjudged, irrespective of the opinion or belief of the parties."

It is further contended that the condition in the policy must be construed to apply to such changes as should arise after the policy was delivered, and Hoose v. Insurance Co. (Mich.) 47 N. W. 587, and Hall v. Insurance Co. (Mich.) 53 N. W. 727, are cited to support the proposition. But these cases do not, in our opinion, apply to such a condition as is contained in the policy now before us. But in Insurance Co. v. Vanlue, *supra*, this precise condition was before the court, and the court felt compelled to reverse the judgment of the court below, which was in favor of the plaintiff.

The counsel for respondent further contends that the description of the property in the lease hypothecated or mortgaged for the payment of rent, etc., does not refer to the property described in the policy of insurance. But in our opinion that question is not properly before us for review on this appeal. It is sufficient for the purposes of this decision that we find the language used in

the lease broad enough to include the property described in the policy. The term "buildings and improvements" would most certainly include machinery, etc., annexed to, and made part of, the buildings or improvements. Again in two clauses of the lease the term "other property on said premises" is used, and in one clause the term "goods" is used. Whether or not the machinery, belting, pulleys, elevator, etc., specified in the policy constituted a part of the "building" or "improvements," "or other property" or "goods" upon which a lien was created or given by the terms of the lease, are purely questions of fact, for the jury. And this question can only be determined by ascertaining how the machinery, etc., was constructed, used, etc., in connection with the buildings or improvements, or where and how it was located, at the time the policy was issued. The circuit court having excluded the lease as evidence, and directed a verdict for the plaintiff, the question of whether or not the property described in the lease as mortgaged for the rents, etc., included the property specified in the policy of insurance, has not been passed upon by the court or jury, and is therefore not before us. In our opinion the court erred in excluding the lease as evidence, and in directing a verdict and the judgment of that court is reversed and a new trial granted.

KELLAM, J., took no part in this decision.