[S. F. No. 5039. In Bank.—January 24, 1910.]

## ROSALIE RAULET, Respondent, v. NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE (a Corporation), Appellant.

FIRE INSURANCE ON FURNITURE—POLICY AVOIDED BY ENCUMBRANCE OF CHATTEL MORTGAGE—SECURITY FOR RENT NO ENCUMBRANCE—RISK NOT INCREASED.—A clause in fire insurance policy on furniture, which avoids the policy if the property be or become encum-

bered with a chattel mortgage, relates only to an ordinary chattel mortgage which in fact encumbers the property, and does not apply to a chattel mortgage in form, which is a mere security for rent, or in the nature of a bond to become effective only in case of the non-payment of rent. Such instrument does not in fact encumber the furniture, which is many times in value the amount of the insurance, and does not increase the risk of the insurer in any degree.

ID.—INTERPRETATION OF POLICIES OF FIRE INSURANCE.—The practice of this court has been to consider contracts of fire insurance in view of their general objects and the legitimate conditions prescribed by the insurers, rather than upon a basis of strict technical interpretation. The language employed in the policy is to be given a reasonable construction in view of the purposes, as well of the entire contract as of the particular condition under discussion.

ID.—PURPOSE TO AVOID INCREASE OF RISK.—Generally speaking the purpose of a policy of fire insurance is to avoid liability in the event of the occurrence of circumstances, which would tend to increase the hazard beyond that which was in contemplation of the parties when the insurance was effected.

ID.—PROVINCE OF TRIAL COURT—DETERMINING CHARACTER OF CHATTEL MORTGAGE UNDER POLICY.—The court below was entitled to regard the circumstances surrounding the execution of a chattel mortgage under the provision in the policy, the situation of the parties to it, and what was done under it, to determine its true character, and was not concluded by the bald fact that it was labeled "chattel mortgage," or was in the form usual to chattel mortgages, and also to examine into the theory of the provision against chattel mortgages, the reason for its insertion, the evils or added risks to the insurer it was designed to guard against, and after having made this examination, to determine whether the instrument was of such a nature as to violate the true intent of that provision.

ID.—LIEN TO BE REGARDED IN REFERENCE TO RISK.—An alleged lien under a policy of fire insurance must be regarded with reference to its actual effect upon the risk assumed by the insurer.

ID.—COMPLAINT UPON POLICY—SUFFICIENCY—LOCATION AND USE OF PROPERTY INSURED AT TIME OF LOSS—AVERMENT FAIRLY IMPLIED.— Although a complaint upon a policy of fire insurance, to be sufficient, must substantially show that the property insured was in the described building, and that it was used and occupied at the time of loss by fire; yet it is held that the location and use of the property in such building described as "occupied as stores and lodgings" is by fair implication alleged to be the same at the time of the loss as at the time of the insurance.

ID.—CREDIT OF PAYMENT OF PREMIUM—DELIVERY OF POLICY—WAIVER OF PAYMENT AFTER LOSS — DEDUCTION FROM LOSS — SUPPORT OF FINDING.—It is held that a finding that "the payment of the premium was not a condition precedent to defendant's liability thereunder and that the true consideration upon which the defendant executed and

delivered the policy was not the payment of the designated premium, but was plaintiff's promise to pay it on demand," is sufficiently supported when the delivered policy recites no payment of premium, and the evidence shows a grant of credit, and a waiver of payment after loss, by an agreed deduction of the premium from the amount of the loss.

Id.—Latent Ambiguity—Conduct of Parties.—Practical Construction of Contract.—The policy having failed to recite payment of the designated premium, its designation thereof as consideration of the policy involves a latent ambiguity; and it was proper for the court to consider the conduct of the parties as indicative of their understanding of its provision. The contemporaneous and practical construction of the·contract by the parties is strong evidence as to its meaning, if its terms are equivocal.

Id.—Effect of Unconditional Delivery of Policy—Extent of Credit —Common Knowledge.—From the circumstance that there was an unconditional delivery of the policy without prepayment of the premium, the court was justified in concluding that the defendant extended credit, as within common knowledge is usually done in favor of responsible parties.

Id.—Rule of Construction — Indulgence Shown to Assured. — The recognized rule of construction that every indulgence not inconsistent with the plain meaning of the contract must be shown to the assured, may be invoked in aid of the court's finding as to credit of payment of premium.

Id.—Rule of Law—Payment of Premium Not a Condition Precedent. —It is a rule of law that even though payment of the premium is expressly provided as the consideration of the policy, it is not a condition precedent to the operation of the policy and to any recovery on it.

Id.—Waiver of Provision for Non-Liability—Delivery with Credit— Liability for Loss.—An express provision in the policy that the company shall not be liable on the policy until the premium is actually paid, is waived by the unconditional delivery of the policy to the assured as a completed and executed contract, under an agreement express or implied, that a credit shall be given for the premium; and the company is liable for a loss that may occur during the period of credit.

Id.—Sufficiency of Complaint—Compliance with Conditions—Delivery of Policy—Proof and Findings as to Credit—No Variance.—It was sufficient for the plaintiff to aver that he complied with all the conditions on his part, and that defendant accepted such performance and delivered the policy, and proof of an extension of credit upon the premium, and findings relative thereto, disclose no material variance, and do not affect the cause of action upon the delivered policy as an executed contract.

Id. — Defense of Non-Payment of Premium — Rebuttal Proof — Waiver Excusing Payment.—Where the answer expressly pleads,

as matter of defense, that no premium was .ever paid, such matter of defense is deemed denied, and plaintiff may meet the defense by proof of any matter in rebuttal thereof, including waiver excusing payment.

ID.—TITLE OF PROPERTY IN HEIR OR DEVISEE.—In this state the title to property vests in the heir or devisee immediately upon the death of the ancestor, subject only to the right of administration.

ID.—INSURABLE INTEREST OF SOLE DEVISEE OF COMMUNITY PROPERTY.— A widow and executrix who is the sole devisee of community property not yet distributed, after the time for any claims is fully passed, and who owns the whole right in sufficient furniture for a lodging-house, the distribution of which she subsequently receives, has an insurable interest therein, which entitles her to insure the same in her own name, and such insurance is not affected by a provision in the policy that it shall be void if the interest of the insured be other than unconditional and sole ownership, when no question of fraud, misrepresentation, or concealment is involved.

ID.—SUFFICIENCY OF INTEREST—WHOLE LOSS FROM FIRE.—The insurable interest is sufficient when the whole loss will fall upon the insured person in case of the destruction of the insured property by fire.

ID.—WAIVER OF PROVISIONS AS TO PRIOR CHATTEL MORTGAGE—CONDUCT OF DEFENDANT.—The provision in the policy making it void if this insured property be or become encumbered by a chattel mortgage, is waived by the conduct of the defendant as to a prior chattel mortgage made by the husband and wife to secure rent before the husband's death, by dispensing with a written application for insurance by the widow as sole devisee of the husband, and failing to make inquiry as to the existence of such mortgage upon the insured property, where it appears that there was no misrepresentation by the widow, and that the application was made through her agent, and that the widow was ignorant in fact of the provision in the policy as to a subsisting mortgage.

ID.—DUTY OF DEFENDANT.—The insurer should either have made inquiry in reference to any chattel mortgage on the property, or required a written application by question and answer covering all material matters in the policy, or consulted the records in the recorder's office, where it would have been apprised of the existence of the mortgage for rent.

ID.—PLAINTIFF NOT BOUND TO MAKE ∘DISCLOSURE IN ABSENCE OF INQUIRY.—The insured was not bound to make disclosure as to a subsisting mortgage to secure rent in the absence of an inquiry as to its existence.

ID.—WAIVED PROVISION NO BAR TO RECOVERY.—A waived provision as to a subsisting chattel mortgage is no bar to recovery.

ID.—WAIVER BY GENERAL AGENT NOT REQUIRED TO BE WRITTEN.—A waiver by a general agent of an insurance company having power to make it is not required to be in writing, but may be made orally or by his conduct indicating such waiver.

ID.—PROOF OF WAIVER PERMISSIBLE WITHOUT SPECIAL AVERMENT.—
Though it was incumbent on the plaintiff to aver generally perform-
ance of all conditions on her part to be performed, she was not
obliged to aver a waiver of a condition as to the existence of a chat-
tel mortgage, but when a breach of such condition is pleaded in the
answer, a waiver then may be proved by way of reply thereto.

ID.—SUPPORT OF FINDING AGAINST FALSE SWEARING IN PROOFS OF LOSS.
—It is held that the court was justified in finding that there was no
false swearing in the proofs of loss, and that it is well settled that
only willful misstatements in that regard will avoid the policy.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial.  Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Aitken & Aitken, for Appellant.

J. C. McKinstry, and Orville C. Platt, for Respondent.

MELVIN, J.—After this cause was decided by the district
court of appeal a rehearing was granted in order that this
court might further examine the authorities and consider the
arguments with reference particularly to two questions:  1.
Was the chattel mortgage which was given to secure the pay-
ment of rent, the sort of encumbrance contemplated by the
terms of the policy?  2. Assuming that it was, did the con-
duct of the defendant corporation at the time of the making
of the contract of insurance amount to a waiver of the clause
in the policy with reference to chattel mortgages?

To the first question the learned district court of appeal re-
turned an affirmative answer, basing its conclusion in part
upon sections 2884, 2920, and 2958 of the Civil Code, which
prescribe the form of a chattel mortgage and provide that a
lien may be created to take immediate effect as security for
the performance of obligations not then in existence.  In the
opinion of the district court of appeal cases are also cited with
approval in support of the view of that court.  Among these
are *Continental Insurance Co.* v. *Vanluc*, 126 Ind. 410, [26
N. E. 120]; *Lee* v. *Agricultural Ins. Co.*, 79 Iowa, 379, [44 N.
W. 683]; *Peet* v. *Dakota etc. Ins. Co.*, 7 S. Dak. 410, [64 N. W.
206].  The question is one of some difficulty, and in view of

the authorities cited we would be loath to disagree with the learned district court of appeal if we were not convinced that the practice of this court has been to consider contracts of insurance in view of their general objects and the legitimate conditions prescribed by the insurers, rather than upon a basis of strict technical interpretation. The true rule has been recently expressed by this court as follows, in *Clayburgh* v. *Agricultural Ins. Co.*, 155 Cal. 708, [102 Pac. 813]: "The language employed in the policy is to be given a reasonable construction, in view of the purposes, as well as of the entire contract, as of the particular condition under discussion. The general object of the policy is to indemnify the insured against loss or damage by fire. The company, agreeing to furnish this indemnity in return for a certain premium, seeks to limit its risk by various provisions. Generally speaking, their purpose is to avoid liability in the event of the occurrence of circumstances which would naturally tend to increase the hazard beyond that which was in the contemplation of the parties when the insurance was effected. The insurer seeks to guard itself against liability in the event that the condition of the insured property should so change that the risk upon such property in its altered condition would presumably not have been assumed for the premium paid." Keeping in mind the foregoing canon of interpretation and examining the phraseology of the policy, we find no difficulty in agreeing with the contention of respondent's counsel that: "The court was entitled to look at the circumstances surrounding the execution of the instrument; at the situation of the parties to it, and at what was done under it, to determine its true character, and was not concluded by the bald fact that it was labeled 'chattel mortgage' or was in the form usual to chattel mortgages; and also to examine into the theory of the provision against chattel mortgages, the reason for its insertion, the evils or added risks to the insurer that it was designed to guard against; and after having made this examination, to determine whether the instrument before it was of such nature as to violate the true intent of that provision." The chattel mortgage here considered was in substance a bond, to become effective in the event of the non-payment of the rent. We are just as much entitled to consider its true essence as we would be to determine in a controversy relating to real property that a deed

absolute in form was in reality a mortgage. The clause in question provided that the entire policy should be void "if the subject of insurance be personal property and be or become encumbered with a chattel mortgage." It will be seen that the policy prohibits not the mere existence of a chattel mortgage, but that condition in which the property should be "encumbered" with such a mortgage. Whatever may be the definition of the word "encumbered" when matters of title are considered in connection with contracts of sale, viewed as an insurable risk Mrs. Raulet's personal property never was "encumbered." Its value was many times the amount of the insurance. The value of the furniture purchased after the date of the chattel mortgage and before the issuance of the policy of insurance was found by the court to be equal to twice the sum demanded in the suit. The appellant's risk was never increased one iota by the so-called chattel mortgage. In *Caplis* v. *American Fire Ins. Co.,* 60 Minn. 376, [51 Am. St. Rep. 535, 62 N. W. 440], while the alleged lien considered was not in terms a chattel mortgage, but was a stipulation in the lease that the lessor should have a first lien on all buildings for unpaid rent and taxes, the court did interpret this provision in the standard form of policy, saying: "The clause must be construed as simply guarding against the common, ordinary chattel mortgage and instruments of the same general nature, use and purposes." The instrument here considered is of no greater dignity than the lease which was the subject of discussion in the Minnesota case, and the language is used for no different purpose. We think, therefore, that case is authority for the conclusion which we have reached. (See, also, *Place* v. *St. Paul Title Ins. & Trust Co.,* 67 Minn. 126, [64 Am. St. Rep. 404, 69 N. W. 707]; *Allen* v. *Hudson River Mut. Ins. Co.,* 19 Barb. 446.) The case of *Continental Ins. Co.* v. *Vanlue,* 126 Ind. 140, [26 N. E. 120], is not strictly in point here because in that case the mortgage was given to secure the payment of an annuity by Vanlue to his grantor of one half the net income of the farm, such promised division of profits being the *consideration of the conveyance* to him. The court properly held that although the payments were to be made at stated intervals and no default had ever occurred, the lien was continuing and was strictly within the terms of the policy. The wisdom of such conclusion will more fully appear when

we reflect that the mortgage provided for a foreclosure upon
*any default* in the stipulated payments. Naturally any arrear-
age would put the mortgagor in danger of losing his whole
property and would greatly increase the "moral hazard." In
that very case, although the policy was sufficiently compre-
hensive to include all liens, it was held not to be violated by
the existence on the record of a lien of replevin bail which
had been discharged but not satisfied of record at the date of
the issuance of the contract of insurance. The case is really
in line with our decision that we must regard an alleged lien
with reference to its actual effect upon the risk assumed by
an insurer. (See, also, *Smith* v. *Niagara Fire Ins. Co.*, 60 Vt.
682, [6 Am. St. Rep. 144, 15 Atl. 355].) In *Lee* v. *Agri-
cultural Ins. Co.*, 79 Iowa, 379, [44 N. W. 683], the mortgage
had been given to secure the plaintiff as surety for the assured
for $125 borrowed money—quite different from the purely
contingent obligation in the case at bar. *Peet* v. *Dakota Fire
& Marine Ins. Co.*, 7 S. Dak. 410, [64 N. W. 206], does in
principle sustain appellant's position, but it differs from the
case at bar in the circumstance that any violation of the lease
would deprive the lessor of *all* interest in the property. The
lease provides that "in case of violating these covenants, or
any of them, said lessee and his assigns shall forfeit said lease
and improvements, and lessors, without notice, may, either
with or without any writ or legal process, at their option, re-
enter and hold said premises and improvements, buildings,
etc., from which time all claim by the lessee shall fully cease."
In view of the foregoing discussion we hold that the so-called
mortgage did not render the policy void. After a careful con-
sideration of the question of waiver we are convinced that the
conclusion of the learned district court of appeal upon this
point is correct, and we hereby adopt the decision of said court
upon that point, and, indeed, in all particulars, except the
matter discussed in the foregoing paragraphs. Said decision,
so far as applicable, is as follows:—

"The appellant contends that the judgment and the order
denying its motion for a new trial should be reversed for the
following reasons: '1. There being no allegation as to the
location and use of the property at the time of the fire, the
complaint does not state a cause of action and the demurrer
should have been sustained. 2. The policy never took effect.

as the premium was never paid. 3. Plaintiff was not the sole and unconditional owner of the property. Her interest was concealed and misrepresented in respects made essential by the policy, and was not truly stated therein, although a true statement thereof was warranted. 4. The property was encumbered by a chattel mortgage, in violation of a condition precedent. The invalidity was not waived by issuing the policy, in ignorance of the breach of the condition, the burden being on plaintiff to disclose the encumbrance. It could not have been waived except in writing. 5. The policy was avoided by false swearing by the insured.' "

"As to the complaint it is asserted that 'there is no allegation that at the time of the fire the property was contained in the described building or that the building was at said time "occupied only as stores and lodgings.' " To the effect that these allegations are material citation is made of *Allen* v. *Home Ins. Co.,* 133 Cal. 29, [65 Pac. 138], and *Arnold* v. *American Ins. Co.,* 148 Cal. 660, [84 Pac. 182]. In the former it is said: 'The principal contention under this head is that the complaint does not allege that the building at the time of the fire, was occupied as a dwelling-house. It was in the contract between the insurer and the insured that the premises were insured while occupied as a dwelling-house. It was essential for plaintiff to prove that the fire occurred while the premises were occupied as such dwelling-house. If it was essential to prove such fact, it was essential to allege it. . . . The allegation was not merely a condition precedent as referred to in section 457 of the Code of Civil Procedure. It went to the very essence of plaintiff's right to recover.' "

"In the Arnold case, it is declared: 'That the houses were occupied as dwelling-houses at the time of the fires, and that the furniture was at such time contained in the specified house, were essential to any liability on the part of defendant, and therefore essential to the statement of a cause of action. Not being alleged, they must be taken as having no existence.' It is also rightly held that the defect is not cured by verdict and judgment since there was 'an entire absence of both direct and implied allegation of a material fact.' "

"But in the case before us the location and use of the property are at least fairly implied and the complaint in that respect meets the demand of the policy that the insurance

shall extend 'to the following described property while located and contained as described herein, and not elsewhere, to wit: . . . all while contained in the five-story brick building, occupied only as stores and lodgings and situate Nos. 566-74 north side of Geary Street between Mason and Jones streets, San Francisco.' Turning to the complaint, we find these allegations: 'That on the 19th day of April, 1906, the said property was totally destroyed by fire, and plaintiff was thereby damaged in the sum of $15,000.00; that said property insured as aforesaid, and described in said insurance policy consisted of household and kitchen furniture, etc., contained in the five-story brick building occupied only as stores and lodgings, and situate Nos. 566-74 north side of Geary Street,' etc. The location and use, it is manifest, appear as in the policy, but appellant refers the allegation to the time when the policy was issued and not when the property was destroyed. This is, however, an unwarranted construction of the language used. At most it could only be said that the complaint is uncertain in this respect. But it is not even uncertain. The foregoing allegations mean simply this: 'The property insured and described in the policy was destroyed by fire on the 19th day of April, 1906. It consisted of household and kitchen furniture, etc. It was contained in the five-story brick building which was occupied only as stores and lodgings and was situated Nos. 566-74 north side of Geary Street,' etc. No one would have much difficulty in determining from the foregoing where the property was located at the time of the fire or that it was used in connection with the said stores and lodgings."

"Appellant assails the finding of the court that 'the payment of the premium was not made a condition precedent to defendant's liability thereunder, and that the true consideration upon which the defendant executed and delivered the said policy to the said plaintiff was not the payment of the said twenty-four dollars premium, but was plaintiff's promise to pay the said $24.00 to defendant on demand.' It is asserted that actual payment of the premium was made by the terms of the policy a condition precedent to its operation, and, therefore, to any recovery under it. In support of this position the following is quoted from *Bergson* v. *Builders' Ins. Co.*, 38 Cal. 541: 'The principal, and perhaps the only considera-

tion, moving from the insured, is the payment of the premium, and upon that the promise of indemnity rests. The policy in this case, which is in the usual form in that respect, states that the company, in consideration of the premium therein mentioned, insures the persons named, against loss or damage by fire, etc. . . . It is no answer to say that a credit was given to the assured for the premium, at the time the policy was issued, for the payment of the premium is a condition precedent to the right to recover for a loss.' The provision in the policy before us is: 'In consideration of the stipulations herein contained, and of twenty-four dollars premium' the defendant company insures, etc. There is no recital that the premium was paid, and it is admitted and found that it was not. The plaintiff testified that Mr. Quarre, her insurance broker, 'sent me a letter from the insurance company after the fire, asking the payment of twenty-four dollars premium on account of the insurance company. I went to the office of the Northwestern National Insurance Company in Oakland, Mr. Pon and I, and they told me "Never mind"; they didn't pay the premium. They will keep that on the $2,000.00. I was in Oakland with my broker and I asked one gentleman to pay the premium because Mr. Quarre never asked me to pay the premium before, never sent me any bill. I was ready to pay but no one sent me the bill before.' It further appears that on June 1, 1906, a bill for the premium was sent to the plaintiff by the defendant. The foregoing, although somewhat incomplete, is sufficient to support the conclusion that credit was given for the premium and that after the loss, the payment of said premium was waived, and it was agreed that it should be deducted from plaintiff's claim to the face value of the policy. There was no objection to the evidence tending to show the credit given or the waiver, but it is insisted that plaintiff must stand or fall upon the allegations of the complaint, that these show performance of the conditions of the policy which include payment, and it is argued that proof of waiver or non-payment presents a fatal variance in the light of the Bergson case and other authorities upholding the rule as stated in 19 Cyc. 923, that 'Plaintiff cannot, either generally or specifically, allege performance of the conditions of the contract and support such allegations by proof of waiver.' But, as pointed out by respondent, the phrase 'in consideration of

twenty-four dollars premium' involves a latent ambiguity. It is manifest that it may be construed as indicating payment or the promise of payment of the premium as the consideration. Hence it was proper for the court to consider the conduct of the parties as indicative of their understanding of this provision. 'The contemporaneous and practical construction of a contract by the parties is strong evidence as to its meaning if its terms are equivocal.' (*Keith* v. *Electrical Engineering Co.*, 136 Cal. 181, [68 Pac. 599].) If plaintiff had understood payment to be the consideration and had intended to rely upon it there would have been no such unconditional delivery of the policy without prepayment. From this latter circumstance the court was justified in concluding that the defendant extended credit, as within common knowledge is usually done in favor of responsible parties. To the aid of the court's finding may be summoned, also, the rule of construction generally recognized and well established that 'every indulgence not inconsistent with the plain meaning of the contract must be shown the assured.' It is the law, also, that even though payment of the premium is expressly provided as the consideration, it is not a 'condition precedent to the operation of the policy and to any recovery on it.' It is held in *Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246, [17 Am. St. Rep. 233, 23 Pac. 869], virtually overruling the Bergson case, as stated in the syllabus, that 'An express provision in a policy of insurance that the company shall not be liable on the policy until the premium is actually paid is waived by the unconditional delivery of the policy to the assured as a completed and executed contract under an *express* or *implied* agreement that a credit shall be given for the premium, and the company is liable for a loss which may occur during the period of credit.' To the same effect are *Griffith* v. *New York Life Ins. Co.*, 101 Cal. 627, [40 Am. St. Rep. 96, 36 Pac. 113], and *Berliner* v. *Travelers' Ins. Co.*, 121 Cal. 451, [53 Pac. 922]. In the latter it is said: 'It is also contended that evidence of a waiver of payment was not admissible under the complaint; that payment of the premium is alleged, and that if the policy was delivered without payment the facts showing that defendant was estopped from relying upon the failure to pay should have been alleged. It is true that payment is alleged, but it is also alleged that the insured performed all the conditions on his part, and

defendant accepted performance thereof and delivered the
policy. This was certainly sufficient as a pleading, and the
policy having been delivered it is immaterial, so far as plain-
tiff's right to recover is concerned, whether the premium was
paid or a credit given, the delivery of the policy as an exe-
cuted contract being all that it was essential to allege or
prove.' Thus is completely answered appellant's contention
as to the variance between the complaint and the findings and
the authorities apparently to the contrary, cited from other
states, do not declare the law as applicable here."

"Again, the issue as to payment was directly presented by
the allegation of the answer 'that said plaintiff did not at any
time, or at all, before the destruction of the property pay or
offer to pay to the defendant the said premium of $24.00 or
any part or portion thereof and said premium was wholly
unpaid at the time when said property was destroyed by fire.'
This is clearly a matter of defense. It is deemed denied and it
could be met by proof of payment or of any circumstance,
such as waiver, excusing payment."

"The next point made by appellant—somewhat more serious
—is based upon the fact that the subject of the insurance was
community property and was in possession of plaintiff as
executrix of the estate of her deceased husband, Charles M.
Raulet, who died September 25, 1904. His will was admitted
to probate November 14, 1904. The plaintiff was the sole
devisee and legatee under said will. At the time of the
destruction of the property by fire there had been no distribu-
tion of any part of the estate. The time for creditors to pre-
sent claims had expired. Thereafter, on the eighth day of
January, 1907, all the property of the estate was duly dis-
tributed to plaintiff. It is claimed that the property at the
time of the insurance and until distribution after the fire be-
longed to the estate of Charles M. Raulet, deceased, and there-
fore the case is brought within the provision of the policy that
'This entire policy shall be void if the interest of the insured
be other than unconditional and sole ownership.' Two cases
are cited in support of the proposition that the estate has an
insurable interest that is distinct from that of the heirs or
devisees and that the latter cannot be said to be the sole and
unconditional owners of the property before distribution. In
*Horton* v. *Jack,* 115 Cal. 29, [37 Pac. 652], it appears that the
CLVII Cal.—15

property was community property, and the executrix was the widow of the deceased and his sole legatee. It was held that her taking of the estate property to pay a personal debt was a conversion—'a wasting of the estate which would constitute a *devastavit.*' It did not appear whether or not there were outstanding debts of the estate."

"In *Overton* v. *American Cent. Ins. Co.,* 79 Mo. App. 1, as quoted by appellant: 'It was stipulated in the policy that plaintiff was the sole and unconditional owner in fee simple of the property. It was further stipulated that if the interest of the assured in the property be not truly stated the policy should be void, and that the policy was made and accepted subject to such stipulation. There was no written application for insurance, and nothing was said at the time of the verbal application by either party as to the title. The case shows and in fact concedes that plaintiff was not the sole and unconditional owner. The property was owned by her husband prior to his death, and upon his death descended to his heirs and it had never been partitioned. In such state of facts there was clearly no right of recovery. To sustain the action would be, in the face of the provisions of the contract, without a semblance of excuse or reason in avoidance.' ".

"But those cases are not controlling here. There is a vast difference between the case where an executor, as the sole heir or devisee, converts the property during administration and where he insures it as the sole and unconditional owner. It is the duty of the executor to hold the property to satisfy the claims of the creditors, and where he converts it the rights of the creditors are obviously prejudiced. But here the plaintiff was individually the owner of the property subject simply to her right and duty as executrix to hold temporary possession for the purposes of administration. As a matter of fact, she had the only insurable interest and her title was never disturbed, as is conclusively shown by the decree of distribution afterwards made. In the light of subsequent events it is clear that if it could be said that technically she was not the sole and unconditional owner of the property because of her right to its temporary possession as executrix, she had the insurable interest in it and no one else had any title to it and defendant suffered no prejudice by her representation as to ownership."

"It is well established in this state that title to property vests in the heir or devisee from the moment of the death of the ancestor or testator. (*Brenham* v. *Story*, 39 Cal. 179; *Bates* v. *Howard*, 105 Cal. 173, [38 Pac. 715]; *Estate of Packer*, 125 Cal. 396, [73 Am. St. Rep. 58, 58 Pac. 59]; *Martinovich* v. *Marsicano*, 137 Cal. 354, [70 Pac. 459]; Civ. Code, secs. 1341, 1363, 1384.) In that respect there is no difference under our law between personal and real property."

"In Cooley's briefs on the Law of Insurance, page 1369, it is stated that 'Insurance policies generally contain a clause reciting that the policy shall be void if the insured's interest is other than sole and unconditional, or entire, sole, and unconditional ownership, and this is not expressed in the policy. . . . Its purpose is to prevent a party who has an undivided or contingent but insurable interest in property from appropriating to his own use the proceeds of the policy taken on the valuation of the entire and unconditional title, as if he were the sole owner, and to remove from him the temptation to perpetrate fraud and crime. It therefore follows that the clause is in most cases held to refer to the character and quality of the title—to the actual and substantial ownership, rather than to the strictly legal title. In other words, the insured's interest must be of such nature that he will sustain the whole loss if the property is destroyed.' "

"In *Miller* v. *Alliance Ins. Co. of Boston*, 7 Fed. 649, it is held that so long as the assured, under claim of right, had the exclusive use and enjoyment of the insured property, without any assertion of an adverse right or interest in it by any other person, he had the insurable interest under the sole and unconditional ownership clause. So here, the entire loss was sustained by plaintiff, and it seems to be a narrow view that would defeat the claim on the ground that within the contemplation of the policy she was not 'the sole and unconditional owner.' "

"In *Breedlove* v. *Norwich etc. Ins. Society*, 124 Cal. 169, [56 Pac. 772], it is said: 'Notwithstanding the fact, then, that plaintiff's interest in the property was not that of a sole and unconditional owner, nevertheless she did have an insurable interest which will support her action.' However, the judgment in the Breedlove case was upheld upon the ground of waiver by the insurance company.' "

"In *Sharp* v. *Scottish Union etc. Co.*, 136 Cal. 542, [69 Pac. 253], it is held, as stated in the syllabus, that: 'Where there was no fraud, false swearing, concealment, or misrepresentation by the applicant for a policy of fire insurance which made the loss payable to a mortgagee, and the policy was written by an agent of the company, who delivered it to a representative of the mortgagee, and a full premium was paid and retained by the insurance company without offer of rescission after knowledge of the facts, and the assured person had an insurable interest in the property, though his wife was the owner of an undivided half interest therein, the policy may be enforced by the mortgagee, notwithstanding a clause that if the interest of the insured be other than unconditional and sole ownership the policy should be void.' While, of course, the case can be differentiated from this, as the facts are somewhat dissimilar, yet it involves a stricter construction of the policy against the insurance company than what is insisted upon here by the respondent. In the Sharp case is cited with approval the following quotation from *Manchester Assurance Co.* v. *Abrams,* 89 Fed. 932, [32 C. C. A. 426]: 'Sound reason, as well as the weight of authority, inclines us to the view that where the assured has an insurable interest in the property, and in good faith applies for insurance upon the same, and makes no actual misrepresentation or concealment of his interest therein, and the insurance company refrains from making inquiry concerning his interest, and issues a policy to him, and accepts and retains his premium, the company must be presumed to have knowledge of the condition of his title and to assure the property with such knowledge.' "

"In the case at bar there was no actual nor constructive fraud, no intentional misrepresentation nor concealment, no inquiry on the part of the insurance company; the plaintiff was really vested with the title, the entire loss was sustained by her, and it cannot be held that the policy was void by virtue of the sole and unconditional ownership clause."

"The declaration of the court in the Missouri case cited by appellant must be read in the light of the facts. It seems that the plaintiff there 'had at most a life interest in the property, as there were other heirs and she had but a dower right.' The case is, therefore, of little significance here, even granting that it was correctly decided."

"The question arising from the chattel mortgage is less free from difficulty. The provision in the policy as to that is: 'This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto shall be void . . . if the subject of insurance be personal property and be or become encumbered with a chattel mortgage.' There is also the general provision that 'This policy is made and accepted subject to the foregoing stipulations and conditions,' etc."

"There was in fact a chattel mortgage upon the property to secure the payment of the rent for the building, but the court found in relation thereto 'That the said instrument executed by plaintiff and her husband to the said Aronson was not a chattel mortgage within the meaning of defendant's policy; that at no time from the date said instrument was executed was there any rent overdue from the lessees above named; that at no time was said instrument considered by said plaintiff as a chattel mortgage; that when the plaintiff applied, through the said George Quarre, to defendant for insurance on the said property, no inquiries were made by the said defendant as to whether or not the said property was encumbered by a chattel mortgage, nor were any representations made by the said Quarre as plaintiff's agent, to the effect that the property was not so encumbered; that the provision in defendant's policy relating to chattel mortgages was not a material part of said policy.' The conclusion is therefrom drawn that there was no violation of this provision of the policy and 'that said defendant waived the last-mentioned clause by its conduct when application was made therefor; and that defendant is estopped by its own acts from now setting up the said clause as a defense to plaintiff's claim in this action.' . . ."

"We think, however, that under the circumstances it should be held that this provision in the policy was waived by the conduct of defendant."

"There was no written application for the insurance, and, as we have seen, no actual fraud and no intentional misrepresentation by plaintiff. She was ignorant of this provision in the policy, which was secured by her agent, and no inquiry was made by the company as to the existence of any chattel mortgage."

"It must be presumed, ordinarily, that persons are familiar with the terms of written contracts to which they are parties, and in the absence of fraud they are justly bound by the provisions therein, but the rule should not be strictly applied to insurance policies. It is a matter almost of common knowledge that a very small percentage of policy-holders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous—the one before us covering thirteen pages of the transcript—and in their numerous conditions and stipulations furnishing what sometimes may be veritable traps for the unwary. The insured usually confides implicitly in the agent securing the insurance, and it is only just and equitable that the company should be required to call specifically to the attention of the policy-holder such provisions as the one before us."

"The courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent. The defendant should either have made inquiries in reference to the chattel mortgage, required a written application covering by question and answer all the material provisions of the policy, or have consulted the records in the recorder's office where it would have been apprised of the encumbrance."

"Considering the nature of the contract and the relation of the parties, there should be no difficulty in reaching the conclusion that this provision was waived and it therefore constitutes no bar to recovery."

"In Cooley's briefs on Insurance, page 1396, it is said: 'The authorities are far from being agreed as to the necessity of disclosure, in the absence of inquiry, when the policy contains a stipulation declaring it void if the property is encumbered, and not so represented to the insurer. It has, however, been held in numerous well-considered cases that even if the policy contains a condition declaring it to be void if the interest of the insured be not fully stated, or if the property is encumbered and not so represented, or if the subject of insurance be personal property and be encumbered by a chattel mortgage, disclosure is not necessary, in the absence of inquiry.' And

further: 'That a disclosure of encumbrances is not necessary under a condition calling for a representation as to title or interest, if not absolute in fee simple, or sole and unconditional, seems to be supported by the weight of authority.' "

"In *Wright* v. *Fire Ins. Assoc.*, 12 Mont. 485, [31 Pac. 91], the supreme court of Montana, discussing a similar provision, says: 'According to defendant's position, only one condition of said contract of insurance was ever in force, and that was the clause providing that inasmuch as a portion of the property which defendant pretended to insure was mortgaged—a fact which existed and had not been made a condition of the agreement as negotiated—the policy was entirely void *ab initio*. If this interpretation is the proper one to be upheld by the court its result is that plaintiff negotiated for insurance on her property, truly answering to all inquiries that were made concerning it; defendant promised to place a risk upon it for a certain consideration and received $105 from plaintiff for a paper which provided that she had no insurance, and this result was not according to the negotiations, because no inquiry was made as to a mortgage. No mention was made that the company would not take a risk on mortgaged property. . . . It seems to us that it would be unjust to the insurer, as well as the assured, to put such a construction on the transaction. It would be imputing turpitude to the conduct of defendant which the transaction hardly warrants, when we consider the conduct of the parties at the time the insurance contract was made as shown by the evidence. It would be assuming that the defendant was in such case obtaining, or attempting to obtain, money of plaintiff, under unscrupulous business methods, which fall but little short of false pretense; for it is proper, in considering the effect of defendant's negotiating insurance on property, and receiving consideration therefor, to assume that defendant's managers and agents knew that mortgages, both of real and personal property, are lawful, and that not a few exist, as shown by the public records, and further that they are fully acquainted with the conditions of the policy proposed to be issued. . . . The situation further involves the misleading of the one pretended to be insured into the belief that the property in question was insured, when in fact it was not, and thus not only so contriving as to get pay for the risk without assuming it, but doing the more grievous

wrong of leading the party honestly seeking and paying for insurance into suffering the entire loss of the things proposed to be insured in the transaction. . . . We hold that under the state of facts shown, defendant by writing the insurance on said merchandise without inquiry as to the mortgage thereon did consent to take the risk on the goods under mortgage as effectually as if consent had been indorsed on the policy.' "

"In *German Mut. Ins. Co.* v. *Niewedde,* 11 Ind. App. 624, [39 N. E. 534], it is held by the appellate court of Indiana that 'where application for insurance is orally made, and there are no questions asked concerning encumbrances and the insured is unaware that the existence of a mortgage was fatal to his insurance, the insurer will be deemed to have waived a provision for forfeiture by reason of existing encumbrances. Relying upon appellant's failure to make any inquiry, appellee depends upon the policy as an indemnity in case of loss, but when the loss comes discovers that he had no insurance.    If the law requires such a holding, then our province is but to declare it.    The law, however, does not demand so inexorable adherence to the letter of the contract under all circumstances and all conditions.    In quite a number of cases it has been adjudged that the failure of the company to inquire about, or call any attention to, some particular fact, operates to relieve the insured from a forfeiture which would follow his omission to disclose it, under the strict wording of his policy, although the fact was one material to the risk, but not one unusual or extraordinary,' and it is furthermore declared that in determining whether such a harsh and inequitable forfeiture clause is to be deemed waived the courts have generally applied the same liberal rule in favor of the assured as governs in the construction of the contract itself."

"In *Philadelphia Tool Co.* v. *British-American Assur. Co.,* 132 Pa. 236, [19 Am. St. Rep. 596, 19 Atl. 77], the supreme court of Pennsylvania treated the similar question of waiver of 'the sole and unconditional ownership clause' and it said: 'The defense now taken is that the policy is partly upon real estate and partly on personal property, for which an entire premium was paid, and that as the assured had no title to the land the policy is void as to it, and being void in part is void in whole, so that no money can now be had.    This position rests on one of the almost innumerable conditions, stipulations and

provisos which appear on the policy and which asserts that "if the assured is not the sole and unconditional owner of the property, or if the building stood on ground not owned in fee simple by the assured, or if the interest of the assured is not truly stated in the policy" then the policy shall be void. Is this condition applicable to the case presented on this policy? A policy of insurance, like any other contract, is to be read in the light of the circumstances that surround it. This policy was issued without any application or written request describing the interest of the assured in the building. No actual representation of any sort upon the subject, oral or written, is alleged to have been made by or on behalf of the assured. We ought to assume that a policy written under such circumstances was written upon the knowledge of the representative of the insurer and intended to cover in good faith the interest which the insured had in the buildings. . . . We must also remember that this policy is to be interpreted most strongly against the company whose contract it is. Applying these principles to the question now raised, we conclude that the policy written on within the knowledge of the insurer was made in view of the facts of the case, and was intended to cover such interest in the buildings as the insured had.' It is clear that the waiver of 'the sole and unconditional ownership clause' there involved a wider departure from the letter of the policy than that of the chattel mortgage clause involves under the circumstances disclosed here in view of the fact that nothing was overdue and the property insured was of greater value than the aggregate of the face of the policy and the sum secured by the mortgage. In line with the foregoing are decisions of the courts of Indiana, Kentucky, Montana, Nebraska, Oregon, Vermont, Virginia, and Washington."

"It is conceded by respondent that holdings to the contrary are to be found in the courts of District of Columbia, South Dakota, and Illinois. These latter may be 'well considered cases,' as contended by appellant, but they are opposed to what we conceive to be the just and equitable doctrine and we think they should not be followed."

"As to the point made by appellant that the waiver could only be in writing as provided by the terms of the policy, the case of *Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246, [17 Am. St. Rep. 233, 23 Pac. 869], seems decisive. A large number of

cases is therein cited and the conclusion is reached that 'An insurance company cannot so limit its capacity to contract by general stipulations against waiver of conditions or that its contracts or waivers must be in writing, that it cannot by its agents make an oral contract or oral waiver not forbidden by the statute of frauds. Whether or not any particular agent has the general power of the company to make an oral contract or oral waiver of a condition notwithstanding the provision in the policy requiring a writing, is a question of fact.' And in *Mackintosh* v. *Agricultural Fire Ins. Co.*, 150 Cal. 440, [119 Am. St. Rep. 234, 89 Pac. 102], it is held that 'general agents authorized to issue and deliver new policies are regarded as having the same power to waive conditions and forfeitures as the companies themselves. The limitations embodied in the stipulation do not prevent them from making new contracts; and waivers constituting a new contract upon sufficient consideration need not be evidenced by writing nor indorsed upon the policy, if made by a general agent having power to make the contract, no matter what limitations or conditions may be expressed in the policy.' "

"There is no evidence that the agent here was not a general agent. Indeed, there seems to have been no controversy in the court below as to his authority to bind the company."

"*Iverson* v. *Metropolitan Life Ins. Co.*, 151 Cal. 746, [91 Pac. 609], and *Cayford* v. *Metropolitan Life Ins. Co.*, 5 Cal. App. 715, [91 Pac. 266], are not in conflict with the foregoing. In the former there was a written application made a part of the policy wherein the statements were warranted to be true. It was held that 'the written answer of the insured as to whether he had ever had a specified disease is material to the risk assumed by the insurer and in the absence of any fraud on the part of the insurance company, when the application made and signed by the insured provided that only the officers of the home office had authority to determine whether a policy should issue on the application and that they acted on the written statements, answers, warranties and agreements contained in it in determining that matter, the soliciting agent of the company cannot be deemed to have either actual or ostensible authority to waive such breach of warranty.' "

"In the Cayford case the policy expressly provided that none of its terms could be modified nor any forfeiture waived or

premiums in arrears received except by agreement in writing, signed by either the president, vice-president, secretary, or actuary whose authority will not be delegated and it was rightly held that a local collector had no such· authority and could not waive any of the provisions of the policy."

"The contention of appellant that since plaintiff pleaded performance of her contract she cannot prove waiver is not maintainable. The same principle is involved in reference to the chattel mortgage as to the payment of the premium."

"The declaration of the supreme court in *Breedlove* v. *Norwich etc. Ins. Co.,* 124 Cal. 168, [56 Pac. 772], is in point here: 'It was incumbent upon the plaintiff to aver a performance of all conditions upon her part to be' kept and performed. It was necessary for her then to plead performance of all promissory warranties but it was not necessary for her to plead the truth of an affirmative warranty of title. (*Cowan* v. *Phoenix Ins. Co.,* 78 Cal. 181, [20 Pac. 408].) Still it was obligatory for plaintiff to show by her pleading that she had an insurable interest, and this she undertook to do by the averment touching her title. Defendant, however, by a separate defense, pleaded the warranty as to title and the falsity of it in avoidance of its liability. Since this new matter is taken as controverted under our laws of pleading, any defense to it by way of replication was open to plaintiff without pleading and it was therefore permissible for her to show that there never had been such a warranty, and that it had been waived at the time of the delivery of the policy. That the warranty could be waived in the manner indicated is settled in this state.' "

"Indeed, as stated in the Cowan case: 'There is no necessity of averring performance by the insured of anything warranted to be true when the policy is issued, for the reason that there is nothing to be performed. When the assured has warranted a thing to exist or a representation to be true, at a time when a policy becomes consummated as a contract, he has done all that he can do. . . . Clearly when nothing is required to be performed by him, such an averment by him would be useless and without meaning. Whereas, in the case of a promissory warranty, the assured has warranted that he will do something during the existence of the risk, the requisition of averment of such stipulation and of its performance is required. As is said in 2 Wood on Insurance, page 1136: "It

can readily be determined of what matters performance should be averred by ascertaining what, under the policy, the assured has stipulated to do, and what he must do in order to recover, and he must aver performance of all such conditions, as when he stipulates to erect a chimney, to keep a watchman, to put in a force pump, to keep water in certain quantities and in certain places or any other matter or thing which the insured has contracted to do." ' The allegation, therefore, that 'Said plaintiff has performed all of the conditions on her part to be performed as set forth or contained in the said contract or required to entitle her to recover thereon' has reference to the promissory warranties and does not present an issue as to the chattel mortgage. This issue is presented, however, by the answer and, as we have seen, being deemed denied, to meet it it was proper for plaintiff to prove the equitable estoppel. In the case of *Aronson* v. *Frankfort Accident and Plate Glass Ins. Co.,* 9 Cal. App. 473, [99 Pac. 537], it is clear that a promissory warranty is involved as the alleged waiver referred to something to be done by the insured after the accident. It states the law correctly and is in harmony with what we have stated."

"The court was justified in finding that there was no false swearing in the proof of loss on the part of plaintiff. It is well settled that only willful misstatements in that regard will avoid the policy. (*West Coast L. Co.* v. *State etc. Co.,* 98 Cal. 502, [33 Pac. 258].)"

"We see no reason to hold that plaintiff did not act in perfect good faith or that she desired to take any advantage of defendant."

The foregoing views are deemed decisive of the case and render it unnecessary to consider any other alleged error.

The judgment and order are affirmed.

Henshaw, J., Lorigan, J., and Shaw, J., concurred.

Angellotti, J., and Sloss, J., concurred on the grounds first discussed.