BRYANT *v.* GRANITE STATE FIRE INSURANCE CO.

INSURANCE—TITLE—FRAUD—NOTICE—WAIVER.

Plaintiff's disputed testimony that she notified defendant's agents, at the time she procured a policy of insurance, as to the state of her title, which was only an equitable interest in plaintiff, tended to show a waiver of the usual clause in her policy, nullifying it if she had not a fee simple title to the property, and the evidence justified a verdict for plaintiff in an action on the policy.

Error to Bay; Collins, J. Submitted November 12, 1912. (Docket No. 40.) Decided March 20, 1913.

Assumpsit by Rebecca Bryant against the Granite State Fire Insurance Company on a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Cooley & Hewitt,* for appellant.

*Edward E. Anneke* (*M. L. Courtright,* of counsel), for appellee.

BROOKE, J. This is an action upon a policy of insurance against fire. It appears that plaintiff prior to June 2, 1910, had purchased from the Eickemeyer estate a

dwelling house which was at that time located on Sixth street in the city of Bay City. On that day Messrs. Spear & Lewis, agents for the Commonwealth Insurance Company, and also agents for the defendant company, consented in writing to a transfer of the Commonwealth policy from the prior owner to the plaintiff. Later, and on July 11, 1910, the same agents, by a rider attached to the Commonwealth policy, gave permission for the removal of the building to the south side of Fifteenth street between Fitzhugh and Jefferson streets, Bay City. The Commonwealth policy expired by limitation on September 10, 1910. Prior to that date, and on August 9, 1910, plaintiff, having moved the house to the designated location on Fifteenth street, applied to Spear & Lewis for a new policy upon the building, and the policy in question in this suit was issued. The policy contained the usual condition that:

"This entire policy shall be void if * * * the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

It is not disputed that plaintiff had bought and paid for the building covered by the policy; and it is admitted that Messrs. Spear & Lewis had knowledge of this fact, gained from the former owner, and that they had consented to its removal to the new location; the old (Commonwealth) policy to cover it in transit and at its new location.

It is equally clear that, when the contract of insurance here in suit was effected, plaintiff was not the owner of the ground occupied by the building "in fee simple." The only paper evidence of title she held at that time was the following:

"BAY CITY, MICH., June 16th, 1910.
"Received of Rebecca Bryant $10.00 as part payment of lots 10, 11 and 12, block 269, village of Portsmouth, full purchase price to be $525.00, on terms as follows: $50.00 on signing and delivery of contract, contract to be dated

this date, balance in payments of $50.00 every six months, interest at six per cent., payable semi-annually. When deed is delivered purchaser is to receive an abstract of title and 20-year tax history.          G. W. AMES."

Prior to taking out the insurance in question, she had paid an additional $25 on July 11, 1910. The building was destroyed by fire on October 18, 1910. Plaintiff paid the further sum of $15 on December 18, 1910, and thereupon received a land contract for the purchase of the three lots, mentioned in the receipt, from Bradley, Miller & Co., a corporation, owner of the property. The contract was dated back to June 16, 1910, as provided in the receipt. G. W. Ames, who signed the receipt, was a real estate dealer acting as agent for Bradley, Miller & Co. in the sale of the lots, but had no power of attorney or written contract from the owner of the property, described in the receipt, to make contracts for the land. Plaintiff had gone into possession of the property and had moved the house upon it before the policy was issued.

With reference to notice to defendant's agents upon the question of plaintiff's title, plaintiff testified as follows:

"Q. There was no representations made by you as to the ownership of the property or anything of that description?

"A. It was all talked over. Mr. Spear and Lewis had held the insurance on—

"Q. When you got this policy of insurance, there was nothing said by you to Mr. Spear, or they to you?

"A. I don't know just what you mean.

"Q. When you went to Messrs. Spear & Lewis' office to acquire insurance, you told them you wanted insurance on a building situated on the south side of Fifteenth street, between Fitzhugh and Jefferson?

"A. Yes, sir.

"Q. And they wrote the policy for you?

"A. Yes, sir.

"Q. And that is all the conversation you had with reference to it?

"A. No, sir; they asked me for the number of the house.

"Q. You could not get that for them?

"*A.* I told them that there was not any number on the house as it was standing.  Then they spoke about if I had the contract or deed.  I told them that I did not have either one.  He should call upon Mr. Ames, and he could give him the information.

"*Q.* When you went to Spear & Lewis' office, you told them they could call up Mr. Ames and ascertain the number?

"*A.* Yes, sir.

"*Q.* Did they talk with you then anything about the title to this property?

"*A.* Yes, sir; they knew I bought the property.

"*Q.* Did they talk with you then anything about the title to this property?

"*A.* They did not make me no reply when I told them about the property.  They did not seem to take that into consideration, anything about it.

"*Q.* What did you tell them about the property?

"*A.* I told them just what I have told you about the property—that I had paid Mr. Ames so much money on the place, and that I was to move the house on there.

"*Q.* Was that in August, 1910, that you were telling him this?

"*A.* Yes, sir.  It was whenever it was there.  I don't know even the date I got it on.

"*Q.* Who did you tell this to?

"*A.* I told it to Mr. Lewis.

"*Q.* You told him that you had what kind of a title, if any?

"*A.* I did not tell him.  I told him just as I told you— I had paid so much on the land, and that when I paid so much I got a contract.  He understood it perhaps a great deal more than I did.

"*Q.* Just give me the conversation, will you, please?

"*A.* I will as near as I can.  I went in and told him what I had done, what I had paid Mr. Ames.  Ten dollars on the contract, or I don't know what you would call it, and that when I got $50 paid he was to give me a contract, to be dated back to the day that I first gave him the $10, and that I was to pay interest at 7 per cent., I think.  That was the— That was all the conversation, and he did not talk very much on that subject at all. That is all that was ever said one way or the other between us."

This testimony was flatly contradicted by both Spear

and Lewis.   The record showing the foregoing facts, defendant moved for a directed verdict upon the ground that plaintiff did not have an unconditional title in the lands upon which said building was situate, in fee simple.

This motion was denied, and the court upon this point charged the jury as follows:

"It is the claim of the defendant that the building insured was upon ground not owned by the insured in fee simple, and no written agreement varying the terms of the policy was indorsed thereon, as required by the terms of the policy; that the title to the ground upon which the insured building stood was never in plaintiff, and that she did not advise the agent of the company as to the ownership of the land on which the building stood; that neither the company nor its agents had any notice that the land upon which the building stood at the time of the fire belonged to another than the insured.

"Now, in respect to that claim, I make this explanation: It is a fact that Mrs. Bryant did not own the property in fee simple, so there is no use of your putting in any time upon that.   Mrs. Bryant claims that she owned the real estate in the way I have stated by getting this writing from Mr. Ames by paying the $10 on it at the time of the delivery of the writing, by paying $25 afterwards before the insurance was effected on the same arrangement, and putting the house upon the real estate, and thereby taking possession of it.   That is her claim of title.   And Mrs. Bryant further claims that, at the time she effected the insurance, she notified either Mr. Lewis or Mr. Spear, or both of them, and the notice is as good to one as both of them, of the facts of her title to the real estate, namely, that she had an arrangement with Ames that she had paid the $10, and that under her arrangement she was to pay more and have a contract.   Now, it is Mrs. Bryant's claim that she gave this notice to either Spear or Lewis or both of them.   It is the claim of the defendant, and it is the claim of Spear and Lewis, that this notice was not given, so there is a sharp issue of fact for you to decide and for your consideration.   I charge you that one of the conditions of this policy provides that this entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material facts or circumstances connected with this insurance or the subject thereof; or if the interest of the insured in the prop-

erty be not truly stated therein, or if the interest of the insured be other than an unconditional or sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple, and you are instructed that if you believe from the evidence that the plaintiff was not the absolute sole owner of the property in fee simple at the time the policy of insurance in question was issued, and she did not notify the agents of the company of that fact, then this would render the policy void and the plaintiff cannot recover."

Error is assigned upon this portion of the charge and the refusal to direct a verdict as requested. This assignment raises the only meritorious question in the record.

The jury by their verdict found that the plaintiff had given to defendant's agents notice of the character of her title as claimed by her.

Defendant relies upon the case of *Wyandotte Brewing Co.* v. *Insurance Co.*, 144 Mich. 440 (108 N. W. 393, 6 L. R. A. [N. S.] 852, 115 Am. St. Rep. 458), which expressly affirms the holding in *Wierengo* v. *Insurance Co.*, 98 Mich. 621 (57 N. W. 833). In the *Wierengo Case*, Justice Grant, speaking for the court, said:

"Neither the defendant nor its agent, White, had any knowledge of the existence of the mortgage at the time the policy was issued. * * * Certainly the insured must be held to some degree of diligence in obtaining knowledge of the contracts to which they are parties. Ignorance will not relieve a party from his contract obligations. The law only relieves him therefrom in cases of fraud, mistake, waiver, or estoppel. An insurer is not required by the law to inquire into the condition of the title to the property insured, or to inform the insured of all the conditions and terms of the policy to be issued, or to read it to him, or to inform him of its contents. When received and accepted without objection, he must be held bound by its terms, unless these terms are waived by the insurer."

The *Wyandotte Brewing Co. Case* was determined upon the same state of facts as to notice. It is there said by Justice McAlvay:

"Nothing was said by either party at the time the policy issued relative to the title or interest of plaintiff in and to the land upon which the property was located."

Both of these cases can, we think, be readily distinguished upon the facts from the case at bar. Here defendant, through its agents, knew that plaintiff had purchased the house with the intention of moving it to a new location, and that it had been moved to such new location at the time the policy was issued. It likewise had notice (as determined by the jury) of the exact character of plaintiff's title to the land upon which the house was moved.

Being advised of the character of plaintiff's title or lack of title in the land upon which the building was located, and thereafter having issued a policy of insurance thereon, the defendant must be held to have waived the provisions of the policy requiring the indorsement of the facts thereon. There can be no question that plaintiff had an insurable interest in the building covered by the policy. It is not claimed that she was guilty of any fraud or acted in bad faith.

This case is controlled by a line of cases in this State of which *Hoose* v. *Insurance Co.*, 84 Mich. 309 (47 N. W. 587, 11 L. R. A. 340), is an example. It is there said:

"But we must look at the situation of the parties, the condition of the thing insured, and what was said or done at the time the insurance was effected, in order to arrive at the intention of the parties, which, as before stated, must control in the construction of the warranties contained in the instrument. If the representations are in writing, that is the evidence of what they are. If no application is made in writing, and no statements contained in any written application for insurance as to the risk and the subject-matter of it, then oral proof of such facts may be introduced. In the case under consideration, there was no written application required or given; the application was verbal, and representations, if any were made, were verbal. We have then here the case of a verbal application, and, under the findings of the jury, a true statement of the condition of the title, made by the in-

sured to the defendant through its agent; and afterwards, with the knowledge of that title, the policy in suit issued, in the form and language sued upon."

The question here involved will be found fully discussed and authorities cited in *Rediker* v. *Insurance Co.*, 107 Mich. 224 (65 N. W. 105); *Convis* v. *Insurance Co.*, 127 Mich. 616 (86 N. W. 994). See, also, 19 Cyc. p. 584 *et seq.*

The judgment is affirmed.

Steere, C. J., and Moore, McAlvay, Stone, Ostrander, and Bird, JJ., concurred.