[L. A. No. 6479.   In Bank.—March 15, 1921.]

## JOHN A. KAVANAUGH, Respondent, v. THE FRANKLIN FIRE INSURANCE COMPANY, etc., Appellant.

[1] FIRE INSURANCE—VENDEE UNDER CONTRACT OF PURCHASE—SOLE AND UNCONDITIONAL OWNER.—A vendee in the possession of property under a contract of purchase is the sole and unconditional owner of the property within the meaning of that term as used in a policy of fire insurance providing that the policy should be void unless otherwise agreed in writing if the insured was not sole and unconditional owner.

[2] ID.—CHARACTER OF OWNERSHIP OF INSURED—ISSUANCE OF POLICY WITHOUT INQUIRY—PRESUMPTION.—When an insurance company without any inquiry as to the character of the ownership of the insured issues a policy and receives a premium therefor, it is just to assume that the company intended to cover whatever interest the insured had in the property and that the insured by accepting a policy and paying the premium had the same understanding as to the legal effect of the policy.

[3] ID.—SOLE AND UNCONDITIONAL OWNERSHIP CLAUSE OF POLICY—LACK OF KNOWLEDGE OF CHANGED OWNERSHIP—ABSENCE OF WAIVER. An insurance company cannot be said to have waived the condition in the policy that the policy should be void if the interest of the assured should be other than sole and unconditional ownership where the company was without knowledge of the changed ownership of the insured premises.

[4] ID.—INVALIDITY OF POLICY — VIOLATION OF SOLE AND UNCONDITIONAL OWNERSHIP CLAUSE—ABSENCE OF ESTOPPEL.—A fire insurance company is not estopped from setting up the invalidity of a policy under the sole and unconditional ownership provision, where immediately upon ascertaining the fact that a mistake had been made which resulted from the fact that the insured had sold the property, it recovered the policy from its custodian and issued a new and valid policy covering the property, and did not collect the premium on the old policy but instead collected the premium from the person who was properly insured under the new policy, and paid the loss under the new policy.

APPEAL from a judgment of the Superior Court of San Bernardino County.   J. W. Curtis, Judge.   Reversed.

1.   Outstanding contract for sale of property as defeating sole and unconditional ownership in vendor, notes, 2 L. R. A. (N. S.) 512; 52 L. R. A. (N. S.) 670.

The facts are stated in the opinion of the court.

W. W. Hindman for Appellant.

Allison & Dickson for Respondent.

WILBUR, J.—Plaintiff brought this action to recover for a fire loss upon an insurance policy issued by the defendant corporation May 26, 1915, in San Bernardino. The policy was in the standard form required by our statute (Stats. 1909, pp. 404, 406), which statutory form contained the following provision: "*Unless otherwise provided by agreement endorsed hereon* or added hereto, this entire policy shall be void . . . (b) If the interest of the insured be other than unconditional and sole ownership . . . " It is required that there shall be printed upon the back of such policy the following: "Read this Policy . . . Policy is void *unless otherwise agreed in writing* if . . . 5th. Insured is not sole and unconditional owner." Section 9 of the statute (page 411) provides: "Clauses may be added to the standard form (a) covering property and risks not otherwise covered . . . (d) waivers of any of the matters avoiding the policy or suspending the insurance . . . ," and section 12, page 411, provides as follows: "Any insurer, or the agent countersigning or issuing a fire insurance policy covering . . . property in California varying from the California standard form of policy except as herein provided is guilty of a misdemeanor but any policy so issued shall notwithstanding be binding upon the company issuing the same." On the trial it was stipulated that plaintiff at the time the policy was written was in San Diego, and that he made no written representation to the company and no representation to the company of any kind, character, or nature regarding his title of the property. That prior to the issuance of the policy in question there was a policy that had been issued by N. Adair as the agent for this defendant company; that that policy was made payable to plaintiff and to the Santa Fe Building and Loan Association, mortgagee; that that policy was at the time of the issuance of the policy in suit in possession of the building association; that at the time the former policy expired N. Adair, as agent of the company, without any solicitation from the plaintiff in this

case, but with his full approval and consent that a new policy be issued, issued the policy in question and delivered it to the Santa Fe Building and Loan Association, the policy of the defendant company; that at the time this policy was issued and delivered neither the defendant nor its agent, N. Adair, knew or had notice of the fact that plaintiff in this case had executed and delivered to one Marks an agreement of sale for the premises insured. After the making and executing of the policy, and on the twenty-second day of June, 1915, the agent of the defendant company, N. Adair, went out to the insured house to collect the premium on the policy of insurance that had been issued and delivered to the Building Association in the name of Kavanaugh and the Building Association, and inquired of the occupants of the house where Mr. Kavanaugh was; that he was informed by the wife of Mr. Marks that plaintiff had sold the property to Mr. Marks and had placed him in possession thereof, and that that was the first actual notice that he had of any change of title to this property, or anything that would affect the title of the property. On the same day, and immediately upon receiving such information, the agent of the defendant company went to the Santa Fe Building and Loan Association and requested them to return the policy of insurance in this case, which was done, and that that policy was at once canceled by the agent of the defendant company, N. Adair. The plaintiff, however, did not give his consent to the cancellation of the policy and no notice of cancellation was given him as required by the terms of the policy of an intended cancellation. He simply asked the Building Association for the policy and they delivered it up to him, and he took it over to his office and marked "Canceled" across the face, and sent it to the company. No notice of any kind was ever given by N. Adair, the agent of the company, to plaintiff of his intention to cancel it, until August, 1917, after the fire, which occurred December 29, 1916. That immediately after taking up the policy of insurance in question in this case, on the 22d of June, 1915, the defendant company, through its agent, N. Adair, issued another policy, being policy No. 2,741,852, and made it out in favor of A. L. Marks, with a loss payable clause to the Santa Fe Building and Loan Association, mortgagee. That that policy was delivered to

the Building and Loan Association at the time of its issuance; that after its issuance the Building and Loan Association was paid off in full, and the policy was then delivered to Mr. Marks; after the fire occurred Mr. Marks made claim on the defendant for the loss, and that the defendant settled with Mr. Marks for the loss, and refused to recognize the rights of the plaintiff in this case. No premium was ever paid on the policy in question. Marks paid the premium on the other policy issued to him. As to the nonpayment of the premium, the plaintiff offered the following explanation, stating that it would be substantiated by Mr. Marks, namely, that Mr. Marks had paid the premium; that Mr. Kavanaugh was in San Diego, and he relied upon that information, and no bill was sent to him, and he assumed it had been paid, having no information to the contrary, and it being proper and right Mr. Marks should pay it, Mr. Marks being indebted to Mr. Kavanaugh.

On July 31, 1914, the plaintiff and one Arthur L. Marks had entered into a written contract for the sale of the insured premises for the sum of two thousand eight hundred dollars. The vendee was immediately given possession of the premises and continued to keep up his payments upon the property, and at the time of the fire had paid approximately one thousand one hundred dollars, and after the fire paid $1,285, and had received a deed from the plaintiff and was at the time of the trial the owner of the property. With reference to the effecting of the insurance the plaintiff testified that "Mr. Marks agreed to pay the premium; that he had never been billed by the company or any of its agents for the premium on the policy; that Mr. N. Adair had been writing plaintiff's insurance for about ten years and he was to write this policy for three years and deposit it with the Building and Loan and I would pay the premium. I don't think I saw a policy for ten years. I trusted him to be my agent for the insurance and he deposited it with the Building and Loan." Plaintiff testified that he received a letter from Mr. Adair stating that he had written the policy; that when the property was sold it was with the understanding that plaintiff pay the premium and protect the Building and Loan Association and that Mr. N. Adair would write the policy and deposit

it with the Building and Loan Association. He was questioned and answered as follows:

"Q. You told him to keep the property insured? A. Well, he just took it for granted.

"The Court: You mean insurance agents don't need any telling? A. He didn't seem to. When the policy of insurance expired he would notify me and say he had deposited the policy with the Building and Loan and I supposed he was protecting my interest.

"Q. (By Mr. Hindman.) You expected him to protect your interest? A. Yes.

"Q. And did you have a conversation with him about protecting your interest? A. Only originally. When I bought the place there was a policy on it then, and he said that policy would continue, and I would pay my *pro rata.* That was more than ten years ago, and I don't think we ever had any conversation about protecting my interest after that. It was just a matter of course.

"Q. Did you tell him to issue the policy of insurance? A. I did not. He just issued them and sent them and sent me the bill . . .

"Q. You say this course was kept up for ten years? A. Yes, I think it was over ten years. My impression is there were four policies issued; that is, with the one I took up in the first place."

The plaintiff recovered judgment for $350.09. The amount was arrived at by a somewhat Solomonic process. The defendant appeals but makes no complaint concerning the amount of plaintiff's loss.

[1] The plaintiff was not the sole and unconditional owner of the property at the time the policy was issued (*Sharman* v. *Continental Ins. Co.,* 167 Cal. 117, [52 L. R. A. (N. S.) 670, 138 Pac. 708]). On the contrary, the vendee was the sole and unconditional owner within the meaning of that term as used in the policy of insurance (*McCullough* v. *Home Ins. Co.,* 155 Cal. 659, [18 Ann. Cas. 862, 102 Pac. 814]). This seems to be the general rule in the United States (see note to *Sharman* v. *Continental Ins. Co., supra,* 52 L. R. A. (N. S.) 670), where it is said: "As stated in note in 2 L. R. A. (N. S.) 512, it is held that one who is at the time of the issuance of a policy of fire insurance under contract to sell to another who has absolutely bound himself to pur-

chase the property involved cannot recover in case of loss upon a policy providing that it shall be void if the interest of the insured (unless otherwise stated) be other than 'unconditional and sole ownership.' '' (See, also, *Turner* v. *Home Ins. Co.*, 195 Mo. App. 138, [189 S. W. 626]; *Livingstone* v. *Boston Ins. Co.*, 255 Pa. St. 1, [99 Atl. 212]; *Waller* v. *City of New York Ins. Co.*, 84 Or. 284, [Ann. Cas. 1918C, 139, 164 Pac. 959]; *Globe & Rutgers Fire Ins. Co.* v. *Creekmore* (Okl.), 171 Pac. 874.) It follows that the policy sued upon was void *ab initio,* and that plaintiff can recover, if at all, only upon the theory of waiver or estoppel as to the ownership of the insured property.

Prior to the enactment of the law establishing the form of a fire insurance policy, this court held that a policy issued to a person other than a sole and unconditional owner was valid as to the insurable interest of the insured, where the policy was issued without inquiry as to the title, and without any misrepresentation or concealment by the insured and was accepted by the insured where the premium was paid to and retained by the insurer, without offer of rescission after knowledge of the facts, notwithstanding a clause that if the interest of the insured be other than unconditional and sole ownership, the policy should be void. (*Sharp* v. *Scottish Union etc. Co.*, 136 Cal. 542, [69 Pac. 253, 615].) This was a step in advance of the rule stated in *Allen* v. *Home Ins. Co.*, 133 Cal. 29, [65 Pac. 138], where it was held that the issuance of such a policy waived known facts inconsistent with the conditions of the policy, as pointed out in the dissent of Chief Justice Beatty in *Sharp* v. *Scottish Union etc. Co.*, 136 Cal., page 546, [69 Pac. 253, 615].

Respondent relies upon the case of *Raulet* v. *Northwestern etc. Ins. Co.*, 157 Cal. 213, [107 Pac. 292]. There a widow, sole executrix and sole devisee and legatee under the will of her deceased husband, insured the property in her own name as the sole and unconditional owner thereof. The house was destroyed by fire April 19, 1906, and thereafter, on January 8, 1907, the real estate was distributed to her. In considering the matter the court said: "In the light of subsequent events it is clear that if it could be said that technically she was not the sole and unconditional owner of the property because of her right to its temporary posses-

sion as executrix, she had the insurable interest in it and no one else had any title to it and defendant suffered no prejudice by her representation as to ownership; . . . the entire loss was sustained by plaintiff, and it seems to be a narrow view that would defeat the claim on the ground that within the contemplation of the policy she was not 'the sole and unconditional owner.' . . . In the case at bar there was no actual nor constructive fraud, no intentional misrepresentation nor concealment, no inquiry on the part of the insurance company; the plaintiff was really vested with the title, the entire loss was sustained by her, and it cannot be held that the policy was void by virtue of the sole and unconditional ownership clause.''

It is apparent that the effect of this decision is that in substance and effect the widow was the ''sole and unconditional owner of the insured premises.'' However, in that case, in discussing the question of waiver and estoppel as to a chattel mortgage upon the property, a case involving the sole and unconditional ownership clause is extensively quoted (*Philadelphia Tool Co.* v. *British American Assur. Co.*, 132 Pa. 236, [19 Am. St. Rep. 596, 19 Atl. 77]). It was held that the condition as to encumbrances was waived by the conduct of the defendant. It was there stated: ''There was no written application for the insurance, and, as we have seen, no actual fraud and no intentional misrepresentation by plaintiff. She was ignorant of this provision in the policy, which was secured by her agent, and no inquiry was made by the company as to the existence of any chattel mortgage.

''It must be presumed, ordinarily, that persons are familiar with the terms of written contracts to which they are parties, and in the absence of fraud they are justly bound by the provisions therein, but the rule should not be strictly applied to insurance policies. It is a matter almost of common knowledge that a very small percentage of policyholders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous—the one before us covering thirteen pages of the transcript—and in their numerous conditions and stipu-

lations furnishing what sometimes may be veritable traps for the unwary. The insured usually confides implicitly in the agent securing the insurance, and it is only just and equitable that the company should be required to call specifically to the attention of the policy-holder such provisions as the one before us.

"The courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent. The defendant should either have made inquiries in reference to the chattel mortgage, required a written application covering by question and answer all the material provisions of the policy, or have consulted the records in the recorder's office where it would have been apprised of the encumbrance.

"Considering the nature of the contract and the relation of the parties, there should be no difficulty in reaching the conclusion that this provision was waived and it therefore constitutes no bar to recovery."

The appellant contends that these rules which have been evolved as a part of the law relating to insurance policies have no application to the situation in California, where the form of the policy is prescribed by statute and the insurance company is prohibited by penal enactment from issuing any other form of policy. While it is true that an insurance policy is a contract, it is recognized that in the decisions bearing upon the responsibility of the insurance company, the policy has been treated more as a commodity than as a contract and rules have been evolved which are not applicable to ordinary contracts. [2] It is therefore considered that when an insurance company without any inquiry as to the character of the ownership of the insured issues a policy and receives a premium therefor, it is just to assume that the insurance company intended to cover whatever interest the insured had in the property and that the insured by accepting a policy and paying the premium had the same understanding as to the legal effect of the policy. This conclusion is based somewhat upon the fact that insurance policies are usually very lengthy and contain a great many conditions in language which is somewhat obscure to the layman, and that the insurance company, having the power to write its policy in any form and in any language it chooses, should be deemed to have adopted

language which would fulfill the mutual intent of the parties, or if not, should be estopped from claiming that its policy was void *ab initio*. A number of states have adopted laws providing for a standard form of insurance policy. These laws are not uniform in terms and the decisions thereunder have varied, not only because of such lack of uniformity, but because of a divergence of views of the courts passing upon the effects of such legislation.   (1 Cooley's Briefs on the Law of Insurance, 528.)

This much is clear, at least, that both parties to the fire insurance policy must be deemed to have entered into a contract with reference to the statutory form. In other words, the statutory form is the commodity which is bought and sold in an insurance transaction. The policy in this case, as already stated, was void *ab initio*. It can only be given validity as against the insurance company by the applications of the principles of waiver and of estoppel. [3] It cannot be said that the insurance company waived this condition of the policy because the company knew nothing of the changed ownership of the premises. (*Bryant* v. *Granite Fire Ins. Co.*, 174 Mich. 102, 107, [140 N. W. 482]; *Dahrooge* v. *Sovereign Fire Assur. Co.*, 175 Mich. 248, 251, [141 N. W. 572].)

[4] Is the company estopped under the circumstances to set up the invalidity of the policy herein sued on? Assuming that the agent, N. Adair, was at all times acting for the corporation, we find that the policy was issued under a mistake of facts which resulted from the fact that the insured had sold the property and thus invalidated the policy of the defendant company then in existence and had failed to notify the company in connection with the renewal of the insurance that such change of ownership had occurred. Immediately upon ascertaining the fact that a mistake had been made, the company recovered the policy from its custodian and issued a new and valid policy covering the same property. It did not collect the premium upon the old policy from the plaintiff who was thereby insured, but, instead, collected the premium from the person who was properly insured under the new policy. On the other hand, plaintiff made no application for the insurance, did not accept the policy when issued and failed to pay the premium thereon when demanded. In short, he did nothing, said

nothing, and paid nothing, and now seeks to recover upon a policy which he never received, never saw, and of which he alleges in his complaint he does not now know the contents. If the plaintiff can be said to have acted at all in the matter, he acted either through N. Adair, who issued the policy and replaced it by the new, or through the Building and Loan Association which accepted the old policy and surrendered it for the new, or through Marks, who upon being notified of the issuance of the policy which was void *ab initio,* arranged for the issuance of a new policy properly covering the property and paid the premium thereon. All of these parties actively participated in the arrangement by which the new policy was substituted for the old.

It is proper to observe in this connection that both the policy sued on and the one issued in lieu thereof contained the provision that ''if the insured now has or shall procure any other insurance, whether valid or not, on property covered in whole or in part by this policy,'' the entire policy shall be void. The second policy enabled the purchaser to secure the money with which to pay the purchase price, notwithstanding the fact that the building purchased had been destroyed. It is fairly apparent, though not expressly proven, that this insurance money was in fact used to pay the plaintiff the balance upon the contract price. It would obviously be unjust to the insurance company under such circumstances to hold them under both policies where each contemplated that no other policy should be issued or should be in existence. There is no basis upon which to establish an estoppel against the company. The only wrong complained of is that they substituted a valid policy for a void policy; that they secured the premium for the issuance of the valid policy and refrained from collecting the premium upon the void policy, and that when the loss occurred they paid the full amount of the loss to the holder of the valid policy, who in turn was thereby enabled to pay to the plaintiff the amount of his purchase price.

Judgment reversed.

Sloane, J., Shaw, J., Olney, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.