[Civ. No. 4657.   Third Appellate District.—June 3, 1932.]

CAPITAL GLENN MINING COMPANY (a Corporation),
    Petitioner, v. INDUSTRIAL ACCIDENT COMMIS-
    SION, MARIE HENRY et al., Respondents.

P. G. West for Petitioner.

Redman, Alexander & Bacon and R. P. Wisecarver for Respondents.

H. N. Dyke as *Amicus Curiae.*

THE COURT.—This is a proceeding in *certiorari* to review the award of the Industrial Accident Commission which was rendered against the petitioner, as the employer, on account of the death of George B. Henry, which occurred in the course of his employment in the operation of a mine. The Ocean Accident & Guarantee Corporation, Ltd., was exempted from liability by the Commission, as the insurer of the petitioner, on account of a mistake in the name of the assured as it appears in the policy.

The essential facts of the case are undisputed. Prior to November 15, 1929, Senator J. M. Inman, A. F. Giddings, C. L. O'Brien and E. C. Coates, as copartners, were engaged in operating a gold mine in Placer County under the name of "Glenn Mine". On the last-mentioned date, these same individuals and the Stark Brothers incorporated this mining enterprise under the name of "Capital Glenn Mining Company". Its articles were duly recorded. The mine continued to operate as a corporation in exactly the same manner it was previously conducted as a copartnership. Among the miners who were employed by the partnership and continued to serve in the same capacity under the management of the corporation was George B. Henry.

Prior to the organization of the corporation, on June 13, 1929, the Ocean Accident & Guarantee Corporation, Ltd., insured the copartnership mining enterprise under the name of "Glenn Mine". This policy remained in force for the period of one year.

During the life of this first policy and after the organization of the corporation in November, 1929, two premiums were paid to the insurance company by means of checks of the mining corporation, signed "Capital Glenn Mining Co., By J. M. Inman, By A. F. Giddings." These checks were received and cashed by D. F. Ferguson, the agent of the insurance company. In November, 1929, in response to a letter of inquiry from the mining corporation regarding its employees who were presumed to be covered by the policy, the insurance company addressed its reply to "Capital Glenn Mine", and forwarded it in an envelope similarly addressed. These checks and correspondence furnish undisputed evidence which will charge the insurance company with knowledge of a change of name of the insured company. These facts do not furnish evidence that would inform the insurer that the copartnership had been transformed into a corporation, but they do furnish information which should place the insurance company upon inquiry regarding the identity of the assured before a new policy is issued. No such inquiry was made.

Subsequently, on May 21, 1930, when the first insurance policy was about to expire, the same insurance company issued a new policy No. 813443 in the name of "Glenn Mines", as the name of the insured. This new policy was issued and forwarded to the Capital Glenn Mining Company without an application therefor, without a declaration of facts, and without any previous inquiry on the part of the insurer regarding the change of name or the identity of the assured. It is not contended there was any fraud exercised or misrepresentations made by the insured in procuring the policy. Regarding the issuing of this new policy, Mr. Ferguson, the agent of the insurance company, testified: "The transaction was handled in the usual manner. It was renewed and mailed out to the assured. Q. As far as you know, you received no further information from any person, or asked for none? A. Yes. Q. Just took the old policy and without any consultation with anybody, or

without instructions from anybody, you issued the new policy in the due course of business? A. Yes, sir." On July 12, 1930, the premium on this policy was paid by the mining company executing and delivering to the agent of the insurance company its check for $500, signed, "Capital Glenn Mining Co., by J. M. Inman." This check was accepted and cashed by the insurance company.

After the issuance of this new policy, and the payment of the premium therefor, a fire occurred in the mine on July 14, 1930, and the employee, George B. Henry, was asphyxiated. J. M. Inman, as president of the corporation, immediately rendered a written report of the casualty and made a demand for indemnity under the terms of the policy. This report was furnished in the name of "Glenn Mine", in the form in which the policy was issued. The insurance company thereupon repudiated its liability. The policy was canceled, and the premium was prorated. The insurance company retained a part of this premium.

Upon application, the Industrial Accident Commission awarded Marie K. Henry, the surviving widow of the deceased, George B. Henry, compensation in the sum of $4,449.24, to be paid in specified installments. The Commission also found that the Ocean Accident & Guarantee Corporation, Ltd., was the carrier of the insurance policy and liable to the employer of said deceased person for the payment of the award. Subsequently, upon application therefor, under the provisions of section 20 (d) of the Workmen's Compensation Act of California, this award and findings were set aside. Additional testimony was supplied and other findings were adopted to the effect that, at the time of the casualty, the Ocean Accident & Guarantee Corporation, Ltd., was an insurer of the copartnership, "Glenn Mine", but was not an insurer of the Capital Glenn Mining Company, a corporation, and therefore was not liable to indemnify the employer of said deceased person. An award for the sum of $4,449.24 was rendered in favor of Marie K. Henry, widow of George B. Henry, against the Capital Glenn Mining Company, a corporation. From this award the present writ of review was instituted.

In support of its final award, the Industrial Accident Commission asserts the insured is bound by its declaration of facts which is contained in the written application for a

policy, to the effect that the mining company is a "co-partnership", and that the policy contains a clause that "No assignment of interest under this policy shall bind the company unless the consent of the company shall be endorsed thereon."

■ Neither of these contentions is supported by the record on review. The evidence is without conflict that no written application for this policy was made. It was issued, as the agent, Mr. Ferguson, testified, without inquiry and without request. The written copy of the application for a policy which was filed as an exhibit in the record affirmatively shows there was no signature of any applicant for a policy. ■ The record also shows without conflict that there was no assignment of interest by the mining company after the policy was issued. The corporation was organized November 15, 1929. The insurance policy in question was not issued until May 21, 1930. The exemption clause of the policy in the event of an assignment of interest, therefore, has no application to the undisputed facts of this case.

■ It is asserted this court is powerless to review the findings of the Industrial Accident Commission, under the provisions of paragraph (c) of section 67 of the Workmen's Compensation Act, for the reason that its findings become final and conclusive. But it may not be said that findings of the Industrial Accident Commission which are in direct conflict with the uncontradicted evidence of the record are controlling on this court in this proceeding. It is only where the evidence supports the findings or there is a conflict of evidence, that the conclusions of the Commission become final (27 Cal. Jur. 575, sec. 218; *Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 Pac. 712]).

■ The evidence of the circumstances heretofore related regarding the change in the name of the mining enterprise before the issuing of the policy in question, is likewise uncontradicted. The agent of the insurance company did not deny the receipt and cashing of the three checks which were executed in the name of Capital Glenn Mining Company. He also admitted sending the letter addressed to the same name. He did deny that he knew the copartnership had been transformed into a corporation. There is, however, no conflict of evidence regarding the knowledge on the part of the insurance company of the change in the name of the

mining enterprise. The insurance company was therefore placed upon inquiry regarding the identity of the organization which it proposed to insure. Since the insurance company issued this policy and retained premiums in payment therefor when it was possessed of knowledge of a change of the name of the insured, without written application therefor, and without inquiry regarding the identity or character of the insured, and in the absence of fraud or misrepresentation on the part of the assured, the insurance company will be estopped from denying its liability under the terms of the policy. It is inconceivable that the law will become a party to the injustice of permitting an insurance company possessed of actual knowledge of the real name of an assured, to issue a policy without written application, without inquiry regarding the identity of the proposed assured, and without fraud or misrepresentation on the part of the assured; permit it to collect and retain premiums in payment therefor, and then repudiate its liability because of error in the name or identity of the assured which is primarily the result of the negligence or mistake of the insurance company.

This proceeding does not involve the question of transferring a policy from a copartnership to a corporation. There is no question that the legal definition of the term "company" does not include that of a corporation. The change of the entity of the assured is not necessarily involved. The sole question is whether an insurance company may repudiate its liability under the terms of an insurance policy for which it has received and retained premiums, when a mistake in the name of the assured occurs through its own negligence. Under such circumstances the insurer will be estopped from denying its liability. It will then be presumed to have had knowledge of the change of entity of the assured, and to have insured the employer against accident or death resulting to its employee in the course of his employment. Under such circumstances, it is immaterial that the name of the assured or the character of the entity is erroneously entered in the policy.

In the present case the record shows there was no increase of hazard on the part of the insurance company on account of the error in the name of the assured, or from the transformation of the copartnership into a corporation. The

individual members of the copartnership were originally insured. After the organization of the corporation they continued to remain the chief managers of the enterprise. The mine and its equipment were the same, the management had not changed, and the employees continued to render services exactly as they had previously done. The insurance company was not harmed by the mere artificial transformation from a copartnership to a corporation, nor by the fiction of assuming that the miners were employed by a different entity. Under the circumstances of this case the insurance company should not be permitted to enjoy the fruits of its contract, and repudiate its obligations thereunder when the error in the name of the assured is largely due to the fault of the insurance company and the careless manner in which the policy was issued.

This principle of estoppel was applied in the case of *Sam Wong* v. *Stuyvesant Ins. Co.*, 100 Cal. App. 109 [279 Pac. 1050]. In that case without misstatement or fraud on the part of the insured and without inquiry regarding the title to property an insurance company issued a policy to Sam Wong upon a building to which he held no title. The policy contained a provision that it should become void unless the assured owned the property in fee. The court very appropriately said:

"Moreover defendant is in no position to set up as a defense lack of ownership or that the insured did not own the ground on which the building was situate as it waived objection to the form of the policy and is estopped from denying liability thereunder by issuing the policy and accepting the premiums therefor without any written application having been made by the insured and also without any discussion having been had relative to either title to the buildings or the title to the property on which the same was situate. Plaintiff herein, as owner, had an insurable interest in the building, he being in possession and operating the same as a dryer. (14 Cal. Jur. 465; 14 R. C. L. 915.) Prior to the adoption of the standard form of policy in this state it was held that where the assured had an insurable interest in property, and without fraud, in good faith applied for insurance upon the same, and made no actual misrepresentation or concealment of his interest therein, and the insurance company made no inquiry concerning his

interest, and issued a policy to him, and accepted and retained the premium, the company must have been presumed to have knowledge of the condition of the title, and to have assured the property with such knowledge. (*Raulet* v. *Northwestern etc. Ins. Co.*, 157 Cal. 213–228 [107 Pac. 292]; 14 R. C. L. 926–932.) After the adoption of the standard form of policy, the law of waiver and estoppel remained the same as before upon this subject. (*Kavanaugh* v. *Franklin Fire Ins. Co.*, 185 Cal. 307, 315 [197 Pac. 99]; 14 R. C. L. 932.)''

When an insurance company, through its own fault, issues a policy to an assured under a wrong name, and accepts and retains premiums in payment therefor, it will be estopped from denying that the real employer was insured by the terms of the policy, and in this case every equitable principle demands that the words ''Glenn Mine'' be read as meaning ''Capital Glenn Mining Company, a corporation.''

The award is annulled, and the cause remanded to the Commission for further adjudication in accordance with this opinion.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 1, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 1, 1932.