AMERICAN EMPLOYERS' INS. CO. OF BOSTON, MASS., v. LINDQUIST et al.

No. 21800S.

District Court, N. D. California, S. D.

Jan. 23, 1942.

Hoge, Pelton & Gunther and A. Dal Thomson, all of San Francisco, Cal., for plaintiff.

William F. Reed, of San Francisco, Cal., and Gordon B. Turner, of Concord, Cal., for defendant Lindquist.

Francis P. Healey, of Richmond, Cal., and Wakefield Taylor, of Martinez, Cal., for defendants Healey and others.

JAMES ALGER FEE, District Judge.

This action was brought for declaration of rights under a policy of insurance issued to one Lindquist.

Defendant Lindquist, prior to September, 1940, had been insured under two public liability policies issued by Saint Paul-Mercury Indemnity Company of Saint Paul,[1] the first, in which he was classed as a "contractor", covering the operations of a Chevrolet dump truck and the other, applying to contracting operations as a truckman at 733 Euclid Avenue, Berkeley, and "elsewhere in the State of California". As a description of business and classification of risk in the latter he was listed under the heading "Truckmen-N.O.

---

[1] Hereinafter called "Saint Paul".

C.—including stablemen, garagemen, blacksmiths, repairmen or riggers (storage warehouse employees to be separately rated)." No clause dealing with the use of explosives appears in either of these policies, which expired according to their terms September 28, 1940.

Edward J. Haslam was doing business as Edward J. Haslam Company and had a license as a broker under the California law. Mr. Paul Abbott was employed by Haslam and also held a license as a broker. Prior to September 1, 1940, plaintiff insurance company and Haslam entered into an oral contract whereby the insurance company agreed to pay a proportion of the rent and the salary of a secretary for Haslam in the sum of $130 per month apart from, but in addition to, the usual commissions regularly paid for the solicitation of insurance business. In addition, the insurance company furnished Haslam with a direct telephone line to its office. In return, Haslam was to solicit and sell not less than $25,000 in premiums of insurance business a year for plaintiff. These matters were all without the knowledge of Lindquist until after this action was brought.

Abbott, who worked for Haslam, was an acquaintance of the defendant Lindquist and solicited the opportunity to write insurance for him, just before the expiration of the Saint Paul policies. He received from Lindquist the policies written by the Saint Paul and thereupon telephoned R. J. Barry, head of the underwriting department of plaintiff, and placed an order for like policies covering the same risks. He further told Barry that Lindquist was engaged in moving rock and dirt, some private driveway work and some grading. Barry assumed to write both these policies with plaintiff company. The expiring policies were left with him for this purpose.

Barry called Abbott by telephone later and directed attention of the latter to the fact that the expiring policy on the truck classified defendant Lindquist as a "contractor", and showed that Lindquist was so licensed in California, while the other policy placed Lindquist in the classification "Truckmen-N.O.C.". Abbott answered that inasmuch as Lindquist's chief business was operations with trucks he had been classified in that manner. Barry then filled in the form with the classification but without any notation as to liability in the case of the use of explosives. This memorandum was sent to the policy writer of the plaintiff. This section of the policy as drawn by the policy writer is in accordance with the notations made by Barry on the form before him and describes the business of the insured under the heading "7219–Truckmen—N.O.C.—", in the same form as this classification appeared in the Saint Paul policy. It accurately expresses the notations of Barry as to rates upon the estimated remunerations for the policy period as well as the premiums. However, among other matters, the policy form chosen contains a printed clause which does not appear in the corresponding Saint Paul policy, as follows: "No explosives are or will be used, except as follows:"

Into the blank following this printed clause the policy writer typed the words, "No Exceptions".

After the policy was issued it was given to Abbott who examined it and upon trial testified that he read it and found it in accordance with the order he gave to the plaintiff company. It was thereupon delivered to Lindquist, who accepted the policy and paid the premiums to the insurance company. He testified that he had never read the policy until after he heard of the alleged injuries to Carl Piona, the minor hereinafter mentioned.

The evidence showed Lindquist was engaged in the business of trucking and hauling. He moved dirt and did landscaping and some paving of driveways. He also did grading and moved considerable rock. At irregular intervals, but on the average of perhaps once or twice a week, he blasted rock for his other operations. The business was carried on in this manner while he held the Saint Paul policies, as well as after the issuance of the policy in suit. The blasting was carried on upon two different tracts of land, which were in the same general vicinity and not far apart, but which were under different ownerships. Plaintiff claims one of these tracts had been abandoned by Lindquist for some time prior to the accident.

It was alleged in the complaint in the instant case that on January 17, 1941, Carl Piona, an infant five years of age, found a dynamite cap where it was left on this latter tract by Lindquist, and sustained physical injury by the explosion of the cap while he was playing with it in a place adjacent to a stove. Based upon similar

allegations, on February 3, 1941, Carl Piona, by his guardian ad litem Pete Piona, instituted an action for personal injuries in the state court against the owner of the tract and persons alleged to be lessees and in possession of said tract and Lindquist.

Plaintiff thereupon brought this action asking for declaration of the rights, duties and other legal relations of plaintiff regarding the policy of insurance issued to Lindquist. There were included as defendants in the action Carl Piona, a minor, Pete Piona and Francis P. Healey and Wakefield Taylor, the attorneys for the minor. As supplementary relief the issuance of a temporary injunction was prayed against the action in the state court. The defendant Lindquist answered and by cross-complaint therein contained asked for a reformation of the policy, striking out the clause therein relating to the use of explosives in his business. The court issued a temporary injunction, pendente lite, against the maintenance of the action in the state court. Thereafter, the cause came on for trial here before the court sitting without a jury.

The claims of plaintiff are (1) that the promissory warranty and condition regarding explosives written in to the policy by plaintiff have been broken by Lindquist, (2) that the acceptance of the policy by Lindquist without disclosure of the use of explosives by him constitutes grounds for recision thereof by the company, (3) that the policy was not broad enough to cover quarrying by Lindquist.

It is necessary to discover how the contract came into existence and what it was. Lindquist gave an order for policies to replace the corresponding coverage written by the Saint Paul, which was to lapse a few days thereafter. Apparently, he assumed these expiring policies covered the risks of his business. The nature of the business had not changed. The only direction of the broker, Abbott, to the insurance company was to cover such risks. No direction was given about explosives. The expiring policies contained no prohibition against the use of explosives. The order for insurance, therefore, transmitted to plaintiff and accepted by its agent, contained no term relating to and no exclusion of the risk of the use of explosives by Lindquist.

The policy, then, was not written in accordance with the order, in that it contained the clause excluding the use of explosives.

The insurance company was solely responsible for the inclusion of this alien clause. Barry took the classification "Truckmen—N.O.C.—" from the Saint Paul policy and used it as a basis for figuring the risks on the new policy. Plaintiff company thereby took the responsibility of using this as the appropriate classification for the business of Lindquist.[2] It is true Barry called Abbott regarding the apparent divergence of the classifications in the two expiring policies. Abbott answered truthfully the questions which were asked. Barry made no inquiries of Lindquist or anyone else, except Abbott. He made no further investigation. He required no written application for the policy nor written description of Lindquist's business. Barry knew that he was writing a public liability policy on a truckman who acted as a contractor and who handled rock. He knew this contractor took out a public liability policy on his truck. Therefore, Barry was placed upon notice that some risk of the business was to be covered by the policy in suit. Barry frankly said on the stand that even at that time he knew of no other classification that was more accurate to describe the business of Lindquist.

The inclusion of the clause relating to explosives was more or less accidental. The Saint Paul policy relating to "Truckmen—N.O.C.—" did not contain this limitation, as above noted. Barry's notes contained no such direction to the policy writer. The policy writer, whether because of general direction or accidentally, selected a printed form containing the covenant against explosives and, thereupon, without authorization or direction from anyone wrote the words "No Exceptions". It is apparent from consideration of the Saint Paul form that this limitation is not always placed by insurance companies upon the classification used both in that policy and in the policy in suit. This clause re-

---

[2] See Pacific Employers' Ins. Co. v. Arenbrust, Farahan & Loran, 85 Cal. App. 263, 259 P. 121; Arneberg v. Continental Casualty Co., 178 Wis. 428, 190 N.W. 97, 29 A.L.R. 93; Parker v. North American Accident Insurance Co., 79 W. Va. 576, 92 S.E. 88, L.R.A.1917D, 1174; Pacific Mutual Life Ins. Co. v. Snowden, 8 Cir., 58 F. 342.

garding explosives was, therefore, not a part of the contract between the parties and was inserted in the policy in error by the draughtsman. It was not in accordance with the order of Lindquist and no notice was given to him of the insertion.

In Kahn v. Commercial Union Fire Ins. Co. of New York, 16 Cal.App.2d 42, 60 P.2d 177, 178, insurance brokers who solicited the insurance from Kahn for the Commercial Union Fire Insurance Co. made no inquiry as to the title to the property. No written application for the policy was required. " * * * no representation to the company of any kind, character, or nature regarding plaintiff's title to the property was made." A policy was written which contained the clause voiding the policy in event the insured's interest in the property was "other than unconditional and sole ownership". The court held that the company could not avoid the policy when it was found after loss that insured and another owned the property as partners. The brokers in the Kahn case were apparently representing the insurance company.

Even if it were concluded that Abbott was the agent of Lindquist, the case at bar is ruled by Ames v. Employers Casualty Co., 16 Cal.App.2d 255, 60 P.2d 347, 351. On this point the summary of the facts is given by the court as follows: "The policy was procured by Mr. Burgess, as broker for the insured, by applying in person to Mr. Slosson, manager for the Humphreys Company which was the general agent of the insurer. No written application was made. No question was asked by Mr. Slosson and no representation was made by Mr. Burgess on the subject-matter of statement No. 6. On this subject there was no conflict in the evidence. Mr. Burgess testified that he stated all of the facts and asked for complete coverage of J. W.

Heldoorn and asked the amount of the premium. He was told the amount and that the policy would be issued. Later it was issued and the premium was paid to and retained by the insurer. On receiving the policy the insured put it away without reading it. Under these circumstances the evidence was properly received and the finding was supported by the evidence."

Statement No. 6 was a printed portion of the policy and read as follows: "6. No company has cancelled or declined to issue or renew workmen's compensation or liability insurance on this risk during the past three years except as follows:"

Typed in the blank after this were the words "No Exceptions", as in the case at bar.

The court held that even if this state of facts were not true, still the conditions set up in Statement No. 6 could not be used as a defense, since the statement was made by the insurance company and not by the insured.

This latest expression of the intermediate court of appeal in California is binding upon the federal court sitting in the state.[3] It is but an expression of the law laid down in a number of other California decisions.[4]

Since, then, the insurance company inserted the clause without any representation or concealment[5] by anyone regarding explosives and without inquiry, it assumed to write a clause in the policy contrary to the order and without justification. The policy will not be cancelled upon this ground.

The defense that the policy itself by its terms prevents recovery is, of course, also disposed of by these decisions. The reason is plain. The policy was to cover the public liability of risks of the business conducted by Lindquist. The coverage be-

[3] Fidelity Union Trust Co. v. Field, 311 U.S. 169, 177, 178, 61 S.Ct. 176, 85 L. Ed. 109; Six Companies of California v. Joint Highway District No. 13 of California, 311 U.S. 180, 188, 61 S.Ct. 186, 85 L.Ed. 114; West v. American Telephone & Telegraph Co., 311 U.S. 223, 237, 238, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956.

[4] Raulet v. Northwestern Insurance Co., 157 Cal. 213, 107 P. 292; Kavanaugh v. Franklin Fire Insurance Co., 185 Cal. 307, 197 P. 99; Ames v. Employers Casualty Co., supra; Golden Gate Motor Transport Co. v. Great

American Indemnity Co., 6 Cal.2d 439, 58 P.2d 374; Hutchings v. Southwestern Automobile Insurance Co., 96 Cal. App. 318, 274 P. 79.

[5] The case of Gates v. General Casualty Co. of America, 9 Cir., 120 F. 2d 925, 927, construing California law, is distinguishable on the facts. There a direct inquiry was sent by the company to the broker "who, it is agreed, was the insured's agent", and a letter of insured to the broker was sent by the latter in reply. The court held this was concealment "amounting to positive misrepresentation."

came binding upon the delivery and acceptance of the policy. The company accepted the money of Lindquist in payment for the acceptance of the risks. But the contention here is that the policy was void as soon as delivered because of the unauthorized inclusion therein by the company of the clause relating to explosives. If this inclusion were done intentionally by the company, knowing the circumstances, it would constitute fraud and the obtaining of money without giving value. Even if done inadvertently and by accident the inclusion should not affect the rights of Lindquist who had no knowledge or notice thereof. Especially this accidental inclusion should not affect the rights of Carl Piona, a member of the public which Lindquist in apparent good faith was attempting to protect.

■ The contention is that since Lindquist received the policy and kept it for the period of time before the loss, he is somehow estopped to claim that he made no representations. This is drawing a long bow. But the California courts have clearly answered this proposition also. It is well settled in this state that where there is no fraud or misrepresentation and no written application and no inquiry into the particular subject, the failure of insured to discover a false statement inserted by the insurer in the policy is not a defense.[6] The technical nature of these documents is sufficient excuse for the failure of insured to read a policy or to understand it when read.[7] Lindquist here might have failed to comprehend the nature of this clause even if he had read it. He certainly would have had a difficult task to determine what "Truckmen—N.O.C.—" meant unless he had technical advice, and he might well be at a loss to discover, even after hearing expert testimony, whether his business was covered thereby.

These rulings dispose of the case whether Abbott was the representative of Lindquist or not.

Finally, it is then contended that Abbott is the agent of the defendant Lindquist and that he read the policy very carefully after it was issued and did not object to it. Although this situation has not been expressly dealt with in California, there have been decisions which contain intimations that the negotiation of the contract by a third party will make no difference under states of fact, such as are set forth here. In Raulet v. Northwestern Insurance Co., supra, the policy was secured by the agent of the insured who did not read the instrument. In McElroy v. British America Assurance Co., 9 Cir., 94 F. 990, 1000, the representative of the insured looked at the policy but did not note improper inclusion.

The court say: "It would certainly have been an act of prudence on his part to read the entire policy, but his neglect to do so cannot excuse the company for the default of the agent in not writing the contract in accordance with the representations made by the insured."

This last case is cited and quoted in Golden Gate Motor Transport Co. v. Great American Indemnity Co., supra.

■ In any event the court determines as a question of fact[8] that Abbott was the agent[9] of the plaintiff and not of Lindquist. It appears in evidence that the firm for which Abbott worked was employed by plaintiff to write $25,000 worth of insurance each year. This was compensated by the plaintiff which bore a certain percentage of office rent and secretarial charge for Haslam and installed a direct telephone line to its office. It is the business custom for the insurance company to pay the premium to the broker. Where this is his only compensation, the broker will generally be the agent of the purchaser.[10] Where the arrangement goes to the extent of the one in this case, it is obvious that the relations between insurer and the broker are so close that the latter could not properly represent the purchas-

6 Ames v. Employers Casualty Co., supra; Golden Gate Motor Transport Co. v. Great American Indemnity Co., supra.

7 Raulet v. Northwestern Insurance Co., supra.

8 See Arff v. Star Fire Insurance Co., 125 N.Y. 57, 25 N.E. 1073, 10 L.R.A. 609, 21 Am.St.Rep. 721.

9 Agent here is used in the broader sense. Here the word is not confined to the statutory agent of an insurance company as defined by the Code. California Insurance Code, § 1642, St.Cal.1935, p. 577, cf. Civil Code § 2295.

10 Detroit Trust Co. v. Transcontinental Ins. Co. of New York, 105 Cal.App. 395, 400, 287 P. 535.

er.[11] Here the evidence shows that the broker who is supposed to protect the interests of the insured did not take any care of them. He took no pains to find out what the business of Lindquist was, nor whether he quarried rock or used explosives. He simply sent the business to the agency by whom he was employed and they wrote that form of policy which best suited them, without any regard to the protection for which Lindquist thought he was paying. The policy was issued in plaintiff's office. There the coverage was written. There the "representations" were written. When it was finished, it was submitted for approval to the broker who was in the employ of the agent. He approved it without making any investigation and without advising Lindquist, the defendant, that explosives could no longer be used in the business of the latter, without breach of a promissory warranty.

Abbott's desire to protect plaintiff was shown on the witness stand where he testified in answer to a question from the court that he found the policy in accordance with the order he had placed for Lindquist. This was false. The order did not contain any suggestion as to explosives. Neither of the policies submitted as the previous coverage contained such a clause. The desire to save the compensation for Haslam and protect plaintiff from liability was apparent.

The result is another instance of an insurance company going to great lengths to get business and then attempting to read itself out of the loss.

[7, 8] The policy need not be reformed in accordance with the prayer of the counterclaim. The plaintiff could not use the exclusion of explosives as a defense in a California court, nor can it here. This was not a case of mutual mistake, but a situation where the written contract, because of the mistake of plaintiff, does not express the true agreement of the parties. All courts agree under such circumstances that the true contract can be enforced by the insured without previous reformation. Specifically, in answer to the argument that there was no meeting of the minds on the executed contract and that there could, therefore, be no reformation, a California court, in Ames v. Employers Casualty Co., supra, citing Raulet v. Northwestern Insurance Co., supra, speaks as follows: "If the trial court believed the testimony of Mr. Burgess, * * * there could be no question involved regarding the meeting of minds. As shown above, the policy contained all covenants agreed upon, but the plaintiff's contention is that it contained provisions not agreed upon. On the trial of such actions a reformation has not been held necessary. The holdings have been, as shown above, that the insurer will be held to have waived or will be estopped from relying on such unauthorized provisions."

■ The plaintiff is required to defend against the action of Piona wherever it may be urged.

■ Although there is precedent in this court for the issuance of an injunction pendente lite,[12] under the express language of the statute[13] the granting of the restraining order here was improvident and erroneous.[14] The injunction is herewith dissolved. Upon the situation as now outlined no further bar should be interposed to a prosecution of action in the state court.

■ The minor is not as yet a party to this cause against whom a judgment

---

[11] This situation is entirely different from that disclosed in Strangio v. Consolidated Indemnity & Ins. Co., 9 Cir., 66 F.2d 330, where the broker knew of a loss before the issuance of the policy but after its effective date, and Solomon v. Federal Insurance Co., 176 Cal. 133, 167 P. 859, where the insured and an agent chosen by him applied to a broker for insurance and contrived to have an insurance company with which the latter dealt only occasionally issue a valued policy based on false statements of fact.

[12] Maryland Casualty Co. v. Tighe, D. C.N.D.Cal., 24 F.Supp. 49, 50.

[13] Title 28 U.S.C.A. § 379. "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State * * *". Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 274, 61 S.Ct. 510, 85 L.Ed. 826.

[14] Ætna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665, 670; Maryland Casualty Co. v. Consumers Finance Service, Inc., 3 Cir., 101 F.2d 514, 516. See, also, Pacific Indemnity Co. v. Hite, D.C.Or., 24 F.Supp. 662. Central Surety & Ins. Corporation v. Caswell, 5 Cir., 91 F.2d 607, orders injunction against actions not yet filed which is a somewhat different problem. In any event, it is of doubtful authority and is not here binding.

would be binding.[15] Carl Piona has a right to trial by jury.[16] There are several issues which should not be concluded against him here. These issues include the place of injury and the person or persons responsible. His rights should not be prejudiced here but should be left for trial in the state court. In no event could these matters be tried here.[17]

Appropriate findings may be prepared.

---

[15] Although properly served by delivery of summons to him personally and to his father, California Code Civil Procedure, § 411, his general guardian did not appear in the case nor was a guardian ad litem appointed. California Code Civil Procedure, § 372, § 373, subd. 2. This is vital. See Gouanillou v. Industrial Accident Commission, 184 Cal. 418, 420, 193 P. 937; Johnson v. Southern Pacific, 150 Cal. 535, 89 P. 348, 11 Ann. Cas. 841.

[16] Pacific Indemnity Co. v. McDonald, D.C., 25 F.Supp. 522, 526.

[17] See Patton v. Marshall, 4 Cir., 173 F. 350, 356, 26 L.R.A.,N.S., 127.