INSURANCE COMPANY OF NORTH AMERICA, Appellant,

v.

CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, Appellee.

No. 75–2927.

United States Court of Appeals, Ninth Circuit.

Jan. 18, 1978.

Mark C. Kane, Los Angeles, Cal., for appellant.

S. E. Scarantino, North Hollywood, for appellee.

Before HUFSTEDLER and KILKENNY, Circuit Judges, and GRANT,* District Judge.

* Honorable Robert A. Grant, Senior United States District Judge, Northern District of Indiana, sitting by designation.

PER CURIAM:

This is an appeal by Insurance Company of North America (INA) from an adverse judgment entered against it in favor of Central National Insurance Company of Omaha (Central) in a declaratory judgment action in which Central sought contribution from INA on a fire insurance loss. The parties waived a jury trial and tried the case on a stipulation of facts, two depositions, and the provisions of the insurance policies. On this record, the district court made findings of fact and entered a judgment requiring contribution from INA.

The facts are not in dispute. In August, 1972, the Dempsey Construction Corporation began building a 64-unit condominium project in Idaho, known as the Horizons 4 Sun Valley. At that time, Dempsey obtained a special multi-peril insurance policy with a "builder's risk" endorsement from Central. The policy covered the buildings on the Horizons 4 site during the course of construction. As the Horizons 4 project neared completion, an agent for Dempsey placed an order for a condominium apartment insurance policy with INA. On December 15, 1972, INA issued such a policy, naming as the insured the Horizons 4 Condominium Association. The Condominium Association was the organization which Dempsey contemplated would come into existence after a majority of the Horizons 4 units had been sold and which would serve as the means by which the homeowners could come together, elect a board of governors, and manage their own affairs. The emergence of such self-governing homeowners' associations after the sale of the condominium units had been the practice at other Dempsey projects.

The homeowners' association was not actually formed at Horizons 4 until August, 1973. Meanwhile, Dempsey owned, managed, and controlled Horizons 4 Sun Valley. Dempsey Construction was billed by INA for the earned premium for the period of December 15, 1972, through March 1, 1973, which premium Dempsey paid. In March, 1973, Dempsey dealt directly with INA in the negotiations which resulted in the cancellation of INA's Horizons 4 policy.

On January 4, 1973, while construction was still under way, a fire substantially destroyed the recreation building on the Horizons 4 site. The building was covered by both the Central and INA policies. Each policy provided that its coverage would be excess coverage over any coverage provided by any other policy. Dempsey filed a claim of loss with Central. Central paid Dempsey $64,819.74 in full settlement of the fire loss in return for an assignment of Dempsey's rights and uncollected claims arising out of the fire loss. Central then brought this action for a judgment declaring that INA shall contribute its pro rata share of the amount of loss paid out to Dempsey for the Horizons 4 fire. The district court found that the extent of the coverage available under each policy was virtually the same and ordered INA to contribute to Central one-half of the amount of loss Central had paid out to Dempsey.

INA's principal argument is that on January 5, 1973, the date of the fire, Horizons 4 was not formally organized, and thus without an insurable interest in the property. The question whether the condominium association had an insurable interest is beside the point in this case. As a result of Central's settlement with Dempsey and Dempsey's assignment of its claims arising out of the fire loss to Central, Central stands in Dempsey's shoes. Therefore, the question is not whether the condominium association had an insurable interest, but whether Dempsey, which undeniably had an insurable interest, had a claim against INA.

Dempsey secured the INA policy on the Horizons 4 project. It was billed by INA for the premium, and it paid the premium for the period which included the date of the fire loss. Dempsey also dealt directly with INA over the subsequent cancellation of INA's Horizons 4 policy. Under these circumstances, INA is estopped from denying its liability to Dempsey on the Horizons 4 policy. (Cf. *Capital Glenn Mining Co. v. Industrial Accident Commission,* 124 Cal. App. 79, 12 P.2d 122 (1932) (estopping insurance company from denying liability on a policy which did not properly designate the

owner of the property damaged as the insured, where the premiums had been paid to the insurance company by means of a check drawn by the owner).)

INA says that Dempsey viewed Central as the insurer for the period of construction, and INA as the insurer of the condominium units after their completion and sale to their occupants. We assume that INA is correct. But nothing in the INA policy exempts it from liability on a fire loss of this sort which occurs during construction. INA billed Dempsey for the premium, and it collected that premium. Dempsey had an insurable interest in the building destroyed. If Dempsey had filed its claim of loss with INA on its Horizons 4 policy directly, its claimed defense based upon the condominium association's lack of an insurable interest would have been obviously irrelevant. It is in no better legal condition when it attempts to assert a similar defense to Dempsey's assignee. INA is estopped from denying its pro rata liability to Central on the Horizons 4 policy.

AFFIRMED.